UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – –

CURTIS JAMES JACKSON III
p/k/a 50 CENT, TOMORROW TODAY
ENTERTAINMENT, INC., a New York
corporation, and G-UNIT RECORDS, INC.,
a New York corporation,

                    Plaintiffs

vs.

LEE. Q ODENAT a/k/a "Q" d/b/a
WWW.WORLDSTARHIPHOP.COM,
WORLDSTAR HIP HOP, INC, a Nevada
Corporation, WORLDSTAR, LLC, a Delaware
Limited liability company, WSHH37, LLC,
a Delaware limited liability company,

                    Defendant/Third-Party
                    Plaintiff

vs.

YVES MONDESIR,

                    Third-Party Defendant

– – – – – – – – – – – – – – – – – – – – – – – – – –

Index No.  1:09-cv-05583 (JFK/GWG)

## MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY DEFENDANT YVES MONDESIR P/K/A "WHOO KID's" MOTION FOR SUMMARY JUDGMENT DISMISSING THE THIRD PARTY COMPLAINT AND AWARDING ATTORNEY'S FEES UNDER LANHAM ACT § 35(a)

**On the Brief**

**John P. Fazzio**
**Katherine Braver**


**Oral Argument Requested**

John P. Fazzio, Esq.
FAZZIO LAW OFFICES
26 Broadway, 21st Floor
New York, NY 10004
Phone: (212) 785-5449
Fax: (917) 591-1803
jfazzio@fazziolaw.com

*Attorneys for Third Party Defendant*
*Yves Mondesir p/k/a "Whoo Kid"*

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………………i

Table of Authorities………………………………………………………………………iv

PRELIMINARY STATEMENT………………………………………………………..1

STATEMENT OF FACTS……………………………………………………………….1

STANDARD OF REVIEW. ………………………………………………………….1

I.     **SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE COPYRIGHT INFRINGEMENT CLAIMS CONTAINED IN COUNT ONE OF THE THIRD PARTY COMPLAINT BECAUE THE APPLICALBE THREE-YEAR STATUTE OF LIMITATIONS EXPIRED PRIOR TO INITIATION OF THE CLAIM AND BECAUSE THIRD PARTY PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE FOR COPYRIGHT INFRINGMENT……...2**

     **A.** Third Party Plaintiff's Copyright Infringement Claim is Time-Barred……………………………………………………………………2

     **B.** Third Party Plaintiff Has Failed to Establish a Prima Facie Case for Contributory Copyright Infringement…………………………………………………………..5

     **C.** The Pleadings Must Be Dismissed for Failure to Satisfy the Minimal Pleading Requirements of F.R.C.P. 8, Since the Pleadings Fail to Allege Sufficient Factual Content to Attribute Liability to the Third Party Defendant………………… 8

II.     **SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE TRADEMARK INFRINGEMENT CLAIMS CONTAINED IN COUNT TWO OF THE THIRD PARTY COMPLAINT BASED ON THE DOCTRINE OF LACHES, AND BECAUSE THIRD PARTY PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE FOR TRADEMARK INFRINGEMENT……………………9**

     **A.** Third Party Plaintiff's Trademark Infringement Claim Should Be Dismissed Based on the Doctrine of Laches……………………………………………………9

     1.  Application of the Doctrine of Laches to 15 U.S.C. § 1114(1) Actions……...9

     2.  Application of the Laches Doctrine to the Facts of This Case………………9

**B.** Third Party Plaintiff Has Failed to Establish a Prima Facie Case for Trademark Infringement………………………………………………………………...13

**C.** The Pleadings Must Be Dismissed for Failure to Satisfy the Minimal Pleading Requirements of F.R.C.P. 8, Since the Pleadings Fail to Allege Sufficient Factual Content to Attribute Liability to the Third Party Defendant…………………15

**III.** **SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE INVASION OF PRIVACY CLAIMS UNDER THE NEW YORK CIVIL RIGHTS LAW CONTAINED IN COUNT THREE OF THE THIRD PARTY COMPLAINT BECAUSE THE APPLICABLE ONE-YEAR STATUTE OF LIMIATIONS EXPIRED PRIOR TO INITIATION OF THE CLAIM AND BECAUSE THIRD PARTY PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE FOR INVASION OF PRIVACY………………………………………………16**

**A.** Third Party Plaintiff's New York Civil Rights Claim is Time-Barred……………………………………………………................16

**B.** Third Party Plaintiff Has Failed to Establish a Prima Facie Case for A Civil Rights Law Violation……………………………………………………17

**C.** The Pleadings Must Be Dismissed for Failure to Satisfy the Minimal Pleading Requirements of F.R.C.P. 8, Since the Pleadings Fail to Allege Sufficient Factual Content to Attribute Liability to the Third Party Defendant………………………..

**IV.** **SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE FALSE DESIGNATION CLAIMS CONTAINED IN COUNT FOUR OF THE THIRD PARTY COMPLAINT BECAUSE THE APPLICABLE THREE-YEAR STATUTE OF LIMITATIONS EXPIRED PRIOR TO INITIATION OF THE CLAIM AND BECAUSE THE THIRD PARTY PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE FOR FALSE DESIGNATION………………………………18**

**A.** Third Party Plaintiff's False Designation Claim is Time-Barred………………18

**B.** Third Party Plaintiff Has Failed to Establish a Prima Facie Case for False Designation……………………………………………………………19

**C.** The Pleadings Must Be Dismissed for Failure to Satisfy the Minimal Pleading Requirements of F.R.C.P. 8, Since the Pleadings Fail to Allege Sufficient Factual Content to Attribute Liability to the Third Party Defendant……………………21

**V.** **THIRD PARTY DEFENDANT IS ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER SECTION 35(A) OF THE LANHAM ACT, ASSUMING ALL OF THE CLAIM IN THE THIRD PARTY COMPLAINT ARE DISMISSED, WHICH MAKES THIRD PARTY DEFENDANT A PREVAILING PARTY; EXCEPTIONAL CIRCUMSTANCES ARE PRESENT SINCE THIRD PARTY**

**PLAINTIFF HAS FAILED TO PRESENT A SHRED OF EVIDENCE IN SUPPORT OF HIS CLAIMS AGAINST THIRD PARTY DEFENDANT AND ARE CLEARLY BROUGHT ONLY FOR PURPOSES OF HARASSMENT AND WERE BROUGHT IN BAD FAITH IN A "HAIL MARY" ATTEMPT TO CREATE AN ISSUE OF FACT THAT MIGHT DELAY AN INEVITABLE LIABILITY AWARD TO PLAINTIFF'S IN THE UNDERLYING ACTION....................23**

    **A.** Third Party Defendant Has Made a Sufficient Showing of "Exceptional Circumstances" Warranting Attorney's Fees Because It Has Been Demonstrated That Each of the Claims is Patently Without Merit and Devoid of Any Factual Basis and Is Otherwise Replete With Fraud and Bad Faith, Because the Allegations Appear to Be Made At This Late Hour Merely To Lash Out At A Friend Of The Plaintiff (50 Cent) In Retaliation For The Filing Of 50 Cent's Infringement Lawsuit And Not To Seek Relief For A True Grievance Against Third Party Defendant………………………………………………………24

**Conclusion**………………………………………………………………………….....32

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 247-8, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986) .................................................................. 1

*Anderson v. Strong Memorial Hospital*,
140 Misc. 2d 770, 531 N.Y.S.2d 735 (Sup. Ct. Monroe Cty. 1988) ........................................................ 15

*Armstrong v. Virgin Records, Ltd.*,
91 F. Supp. 2d 628, 2000 WL 351220, at *4 (S.D.N.Y. 2000) .................................................................. 13

*Baker v. Health Mgmt. Sys., Inc.*,
264 F.3d 144, 149 (2d Cir. 2001) ............................................................................................................ 22

*Berns v. EMI Music Publ'g, Inc.*,
1999 U.S. Dist. LEXIS 17541, No. 95 Civ. 8130 (S.D.N.Y. Nov. 12, 1999) ....................................... 4, 15

*Blockbuster Videos, Inc. v. City of Tempe*,
141 F.3d 1295 (9th Cir. 1998) ................................................................................................................. 20

*Boney, Inc. v. Boney Servs., Inc.*,
127 F.3d 821, 827 (9th Cir. 1997) ........................................................................................................... 20

*Cable/Home Communication Corp. v. Network Prods.*,
902 F.2d 829, 845 (11th Cir. 1990) ........................................................................................................... 5

*Celotex Corp. v. Catrett*,
477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .................................................................. 1

*Classic Media*, 532 F.3d at 990; ............................................................................................................ 20

*Conopco v. Campbell Soup Co.*,
95 F.3d 187, 194-95 (2d Cir. 1996) ............................................................................................... 9, 21, 22

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*,
604 F.2d 200, 205 (2d Cir. 1979) ............................................................................................................ 19

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23, 32, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003). ................................................................... 17

*Decorative Aides Corp. v. Staple Sewing Aides Corp.* ...................................................................... 2, 19

*Dister v. Continental Group, Inc.*,
859 F.2d 1108, 1114 (2d Cir. 1988) ................................................................................. 1

*Elements/Jill Schwartz, Inc. v. Gloriosa Co.*,
01 Civ. 904 (DLC), 2002 U.S. Dist. LEXIS 18011 (S.D.N.Y. Sept. 26, 2002) ........................................... 23

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
228 F.3d 56, 61 (2d Cir. 2000) ................................................................................. 17

*Federal Express Corp. v. Federal Espresso, Inc.*,
201 F.3d 168, 174 (2d Cir. 2000) ................................................................................. 17

*Fort Knox Music, Inc. v. Baptiste*,
47 F. Supp. 2d 481, 483 (S.D.N.Y. 1999) ................................................................................. 4, 14

*Gallo v. Prudential Residential Serv. Ltd. P'ship*,
 22 F.3d 1219, 1223-24 (2d Cir. 1994) ................................................................................. 1

*Gemmy Indus. Corp. v. Chrisha Creations Ltd.*,
2004 U.S. Dist. LEXIS 11468 (S.D.N.Y June 23, 2004) ................................................................................. 1

*Gershwin Publ'g Corp. v. Columbia Artists Management*, Inc.,
443 F.2d 1159, 1162 (2d Cir. 1971) ................................................................................. 5

*Gracie v. Gracie*,
217 F.3d 1060, 1068 (9th Cir. 2000) ................................................................................. 20

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
991 F.2d 1072, 1075 (2d Cir. 1993) ................................................................................. 12

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*,
184 F.3d 1107, 1112 (9th Cir. 1999) ................................................................................. 20

*ITSI T.V. Productions v. California Authority of Racing Fairs*,
785 F. Supp. 854, 866 (E.D. Ca. 1992) ................................................................................. 6

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
04 Civ. 7203 (DLC), 2006 U.S. Dist. LEXIS 64393, (S.D.N.Y. Sept. 11, 2006) ........................................... 22

*Kelly v. L.L. Cool J.*,
145 F.R.D. 32, 36 (S.D.N.Y. 1992) ................................................................................. 8, 13

v

*Levi Strauss & Co. v. Blue Bell, Inc.*,
632 F.2d 817, 821 (9th Cir. 1980)..................................................................................18

*Livnat v. Shai Bar Lavi*,
1998 U.S. Dist. LEXIS 917, *8-9, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998)...................13

*Lorenzo De Medici v. Lorenzo De Medici, Inc.*,
101 A.D.2d 719, 720 (App. Div. 1st Dep't 1984)........................................................16

*Marvullo v. Gruner & Jahr*,
105 F. Supp. 2d 225, 232-33 (S.D.N.Y. 2000) ...........................................................13

*Matthew Bender & Co. v. West Publ'g Co.*,
240 F.3d at 123 ..............................................................................................21

*Maurizio v. Goldsmith*,
84 F. Supp. 2d 455, 2000 WL 97666, at *6 (S.D.N.Y. 2000)......................................4, 14

*Merchant v. Levy*,
92 F.3d 51, 56 (2d Cir. 1996)................................................................................2

*Merrill Lynch Inv. Managers v. Optibase Ltd.*,
337 F.3d 125, 132 (2d Cir. 2003)...........................................................................9

*Mushroom Makers, Inc. v. R.G. Barry Corp.*,
580 F.2d 44, 47 (2d Cir. 1978)..............................................................................18

*Nat'l Distillers Prods. Co. v. Refreshment Brands, Inc.*,
00 Civ. 8418 (NRB), 2002 U.S. Dist. LEXIS 13962 (S.D.N.Y. July 30, 2002).......................23

*Netzer v. Continuity Graphic Associates, Inc.*,
963 F.Supp. 1308, 1315 (S.D.N.Y. 1997)...................................................................4

*New Sensor Corp. v. CE Distribution LLC*,
367 F. Supp.2d 283, 286-87 (E.D.N.Y. 2005) ............................................................22

*Pannonia Farms, Inc. v. USA Cable*,
03 Civ. 7841 (NRB), 2004 U.S. Dist. LEXIS 15737 (S.D.N.Y. June 8, 2004) .........................21

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
317 F.3d 209, 221 (2d Cir. 2003).............................................................................22

*Penguin Books U.S.A. v. New Christian Church of Full Endeavor, Ltd.*,

96 Civ. 4126 (RWS), 2004 U.S. Dist. LEXIS 5648 (S.D.N.Y. Apr. 6, 2004)............................................21

*Polaroid Corp. v. Polarad Electronics Corp.*,
287 F.2d 492, 495 (2d Cir.)............................................................................................................18

*Rosner v. Codata Corp.*,
917 F. Supp. 1009, 1019 (S.D.N.Y. 1996)................................................................................4, 15

*Saratoga Vichy Spring Co. v. Lehman*,
625 F.2d 1037, 1040 (2d Cir. 1980).................................................................................................9

*Scarves By Vera, Inc. v. Todo Imports Ltd.*,
544 F.2d 1167, 1172 (2d Cir. 1976).............................................................................................10

*Schuchart & Associates v. Solo Serve Corp.*,
1983 U.S. Dist. LEXIS 15936, 220 U.S.P.Q. 170 (W.D. Tex. 1983).............................................6

*Screen Gems-Columbia Music, Inc. v. Mark Fi Records, Inc.*,
256 F. Supp. 399 (S.D.N.Y.1966)...................................................................................................5

*Streetwise Maps, Inc. v. Vandam, Inc.*,
159 F.3d 739, 742-43 (2d Cir. 1998) ............................................................................................17

*Streetwise Maps, Inc. v. VanDam, Inc.*,
159 F.3d 739, 743 (2d Cir. 1998)..................................................................................................12

*Stone v. Williams*,
970 F.2d 1043, 1048 (2d. Cir. 1992)...........................................................................................2, 4

*Twin Peaks Productions, Inc. v. Publications In-tern., Ltd.*,
996 F.2d 1366, 1383 (2d Cir. 1993)..............................................................................................22

*Vidal Sassoon, Inc. v. Bristol Myers Co.* ........................................................................................19

*Weber v. Geffen Records, Inc.*,
63 F. Supp. 2d 458, 464 (S.D.N.Y. 1999)................................................................................4, 13

*Yurman Design Inc. v. Chaindom Enters., Inc.*,
1999 U.S. Dist. LEXIS 18382, No. 99 Civ. 9307(JFK), (S.D.N.Y. Nov. 29, 1999) ....................4

*Zola v. Merrill Lynch*, 84 Civ. 8522 (CSH), slip op. dated February 24, 1987 at 11. ...............19

**Statutes**

11 U.S.C. § 1114(1) .................................................................................................................... 9

15 U.S.C. § 1114(1) .................................................................................................................... 9

15 U.S.C. § 1117(a) ............................................................................................................. 20, 21

15 U.S.C. § 1117(a). ................................................................................................................. 22

15 U.S.C. § 1125(a) ............................................................................................................. 16, 21

15 U.S.C. § 1125(a)(1)(A)-(B). ................................................................................................ 17

17 U.S.C. 507(b) ........................................................................................................................ 2

C.P.L.R. § 215(3) ..................................................................................................................... 14

Civil Procedure Law and Rules Section 215(3) ....................................................................... 14

F.R. Civ. P.  Rule 8(a)(2) ......................................................................................................... 13

Fed.R.Civ.P. 11 ........................................................................................................................ 23

Lanham Act § 43(a)(1) ............................................................................................................. 17

N.Y. Civ. Rights § 50 ............................................................................................................... 15

Rule 8 ........................................................................................................................................ 13

Section 35(a) ............................................................................................................................. 21

Section 43(a) ............................................................................................................................. 17

Section 51 of the Civil Rights Law .......................................................................................... 15

**Rules**

Fed. R. Civ. P. 56(c) .................................................................................................................. 1

Rule 8(a)(2) ................................................................................................................................ 8

Rule 8, F.R. Civ. P. .................................................................................................................... 8

**Treatises**

Melville B. Nimmer, David Nimmer, Nimmer on Copyright § 12.04[A][2][a] at 12-75 (1996). ................ 6

Melville B. Nimmer, David Nimmer, Nimmer on Copyrights, § 12.04[A][2][b] at 12-76-77 (1996) ......... 6

**PRELIMINARY STATEMENT**

This is a case where there is no factual support for any of the Third Party Plaintiff's claims in the Third Party Complaint.  As will be argued below, Summary Judgment is eminently appropriate under the circumstances. What is more, this is one of those exceptional circumstances where upon the grant of Summary Judgment to the Third Party, attorney's fees are warranted under the Lanham Act.

**STATEMENT OF FACTS**

Third Party Defendant respectfully directs the Court to the Rule 56.1 Statement of Facts submitted with this filing, and referenced herein.

**SUMMARY JUDGMENT STANDARD**.

Under Fed. R. Civ. P. 56(c), summary judgment is mandated, where there exists no "genuine" issue of "material" fact; a dispute over irrelevant or unnecessary facts will not preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). "The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Serv. Ltd. P'ship,* 22 F.3d 1219, 1223-24 (2d Cir 1994)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Id. At 1224 (citing Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

A party opposing summary judgment cannot demonstrate the existence of a genuine issue of material fact merely with conclusory denials of the nonmoving party's allegations.  As the Southern District of New York has recognized, "[t]he Court is 'to grant summary judgment

1

where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative.'" *Gemmy Indus. Corp. v. Chrisha Creations Ltd.*, 2004 U.S. Dist. LEXIS 11468 (S.D.N.Y June 23, 2004).  If the non-moving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then "the moving party is entitled to summary judgment as a matter of law." *Celotex, supra*, 477 U.S. at 322-23.

I.   **SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE COPYRIGHT INFRINGEMENT CLAIMS CONTAINED IN COUNT ONE OF THE THIRD PARTY COMPLAINT BECAUE THE APPLICALBE THREE-YEAR STATUTE OF LIMITATIONS EXPIRED PRIOR TO INITIATION OF THE CLAIM AND BECAUSE THIRD PARTY PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE FOR COPYRIGHT INFRINGMENT.**

   **A. Third Party Plaintiff's Copyright Infringement Claim is Time-Barred Applying the Statute of Limitaitons and the Doctrine of Laches.**

Third Party Defendant plead as its Second Affirmative Defense that Third Party Plaintiff's claims were time barred. (Third Party Answer). Pursuant to 17 U.S.C. 507(b), "no civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim has accrued."  A claim accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *See, e.g., Stone v. Williams*, 970 F.2d 1043, 1048 (2d. Cir. 1992); *Dewan v. Blue Man Group Ltd. Pshp. et als.,* 73 F.Supp.2d 382, 386 (S.D.N.Y. 1999); *Merchant v. Levy,* 92 F.3d 51, 56 (2d Cir. 1996).

Q's copyright claim is styled as a "contributory copyright infringement" action premised upon the allegation that Whoo Kid "induced, caused, or materially contributed to" Q's use of 50 Cent's image on the WSHH website. (Third Party Complaint ¶ 21). The only facts plead in support of these allegations are that Whoo Kid is an "agent" of Plaintiffs 50 Cent and G-Unit who "had authority to grant permission" for Q to use these images (*Id.* at ¶ 16) and that Whoo

Kid "authorized, encouraged and induced" Q to use 50 Cent's and G-Unit's images through "express[] and implied[]" conduct "as a disc jockey, radio host and purveyor of mixtapes." (*Id.* at ¶ 18). The deficiencies in the pleadings and the complete lack of support in the record will be addressed in the next section, but for statute-of-limitations purposes, what is important is the timing of the alleged contributory infringement conduct, and establishing an "accrual date."

Q started the WSHH website in July of 2005. (D/Q, June 11, 2010, p. 39, lns. 18-19; p. 54, lns. 10-25)(Ex. "C"). Between 2005 and 2007, he used 50 Cent's image on his masthead. *Id.* The WSHH website went down from 2005 to December of 2007 and was re-launched in January of 2008. (D/Q, June 11, 2010, p. 40, lns. 1-8; p. 41, lns. 19-23) (Ex. "C"). Between 2005 and 2008, Q kept up three (3) separate images of 50 Cent and G-Unit for at least several months each. (D/Q, June 11, 2010, p. 56, lns. 4-16)(Ex. "C"). Q claims that he stopped using the infringing banner in April 2007, around the time he received a Cease and Desist e-mail from Theo Sedlmayr. (D/Q, May 3, 2011, p. 24, lns. 8-13, p. 26, lns. 12-16) (Ex. "B"). According to Q, he took the banners down upon receipt of the e-mail from Theo Sedlmayr in 2007 (*Id.* at p. 27, lns. 2-12), which he later identifies as being at about the same point the site came back online, between January of 2007 and April of 2007 (D/Q, June 11, 2010, p. 2002, lns. 3-11)(Ex. "C"). Q later admits that the images on the banners stayed up subsequent to the April 2007 email and continuously remained up from January of 2008 until at least March 12, 2009 when he received a formal Cease and Desist Letter from Mr. Theo Sedlmayr, IP Counsel to 50 Cent. (D/Q, June 11, 2010, p. 24, lns. 19-24)(Ex. "B"). Q goes to great lengths to try and make the point that he knew his conduct was infringing in 2007 due to correspondence from an attorney, and that he stopped using the banner at that time. (D/Q, May 3, 2011, p. 24).

3

Clearly, Q's cause of action for contributory infringement must have arisen when the acts alleged occurred, namely the alleged "authoriz[ation], encourage[ment] and induce[ment]" by Whoo Kid to place 50 Cent's and G-Unit's images on the website. (Third Party Complaint ¶ 18). These actions are invented, but if they had occurred, they would have taken place before the banners were posted in 2005.  The earliest date Q could have known about the injurious conduct would have been in 2005.  The latest date he could have known about the injurious conduct was when he received an e-mail in April of 2007 directing Q to take down the images of 50 Cent that appeared on the site.  In either event, more than three (3) years elapsed between Q's knowledge of the injurious conduct and the filing of the Third Party Complaint on October 28, 2010.

For the purposes of copyright law, a claim accrues when the plaintiff knew or should have known of the infringement. *See Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992); *Maurizio v. Goldsmith*, 84 F. Supp. 2d 455, 2000 WL 97666, at *6 (S.D.N.Y. 2000); *Yurman Design Inc. v. Chaindom Enters., Inc.*, 1999 U.S. Dist. LEXIS 18382, No. 99 Civ. 9307(JFK), 1999 WL 1075942, at *7 (S.D.N.Y. Nov. 29, 1999), reconsideration denied, 2000 U.S. Dist. LEXIS 1747, 2000 WL 217480 (S.D.N.Y. Feb. 22, 2000). Ordinarily, the statute of limitations begins to run when the plaintiff has knowledge of, or with reasonable diligence should have discovered the critical facts of infringement. *See Maurizio*, 2000 WL 97666, at *6; *Fort Knox Music, Inc. v. Baptiste*, 47 F. Supp. 2d 481, 483 (S.D.N.Y. 1999), remanded on other grounds, 203 F.3d 193 (2d Cir. 2000); *Berns v. EMI Music Publ'g, Inc.*, 1999 U.S. Dist. LEXIS 17541, No. 95 Civ. 8130, 1999 WL 1029711, at *9 (S.D.N.Y. Nov. 12, 1999); *Rosner v. Codata Corp.*, 917 F. Supp. 1009, 1019 (S.D.N.Y. 1996).[1]

---

[1] As Judge Motley noted in *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 464 (S.D.N.Y. 1999), "as in all statute of limitations inquiries, accrual will be later than the date of violation only to the extent that plaintiff exercised reasonable diligence but remained unaware of the violation."

4

Giving Q the benefit of every doubt, the Court could potentially conclude, although it is not supported by the record, that Q received the e-mail from Theo Sadlmeyer late enough in 2007, between October 28th and December 31st, such that his Third Party Complaint would just narrowly fall within the three-year limitations period. However, to make such a finding, the Court would need to make a finding that Q and WSHH exercised reasonable diligence to determine whether his site was infringing, and dismissal would still be proper under the doctrine of laches. *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 464 (S.D.N.Y. 1999). A "reasonably diligent plaintiff" should be put on notice by "[a]n express assertion of sole authorship or ownership," and move urgently to protect its rights. *Netzer v. Continuity Graphic Associates, Inc.*, 963 F.Supp. 1308, 1315 (S.D.N.Y. 1997).

Based on the foregoing, Q's Contributory Copyright Infringement claims must be dismissed because they are time-barred, estopped by the doctrine of laches, and because Q failed to act with reasonable diligence to assert any contributory claims upon receiving an express and unqualified assertion from 50 Cent's attorneys that his conduct was infringing 50 Cent's copyright in his likeness and image.

### B. Third Party Plaintiff Has Failed to Establish a *Prima Facie* Case for Contributory Copyright Infringement.

As the Second Circuit has held, "one who, **with knowledge** of the infringing activity, induces, causes or **materially contributes** to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Publ'g Corp. v. Columbia Artists Management*, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971) (emphasis added); *see Cable/Home Communication Corp. v. Network Prods.*, 902 F.2d 829, 845 (11th Cir. 1990). Here, Whoo Kid neither knew that Q was making unauthorized use of 50 Cent's and G-Unit's images, nor did he contribute in any way to Q's posting of these images on the masthead of the WSHH website. It is an absolutely

undisputed fact that Q never discussed posting the images in question with Whoo Kid and it is absolutley undisputed that Whoo Kid had no knowledge of the posting of the images prior to this lawsuit; thus, it would have been impossible for Whoo Kid to grant authority. (D/LQO p. 153 lns. 13-20)(Ex. "C")(never discussed posting images with Whoo Kid); D/LQO p. 170 lns. 23-24)(Ex. "C"); (D/YM p. 45 lns. 11-25 p. 46 lns. 2-15)(Ex. "F")(never had a conversation about posting images with Whoo Kid).

One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a "contributory" infringer. For example, in *Screen Gems-Columbia Music, Inc. v. Mark Fi Records, Inc.*, 256 F. Supp. 399 (S.D.N.Y.1966), the district court held that an advertising agency which placed non-infringing advertisements for the sale of infringing records, a radio station which broadcast such advertisements, and a packaging agent which shipped the infringing records could each be held liable as a "contributory" infringer if it were shown to have had **knowledge**, or reason to know, of the infringing nature of the records. Their potential liability was predicated upon "the common law doctrine that one who **knowingly** participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor." *Id.* at 403 (emphasis added).

The contributory infringer must have acted in concert with the primary infringer. 3 Melville B. Nimmer, David Nimmer, Nimmer on Copyright § 12.04[A][2][a] at 12-75 (1996). However, one who furnishes a copyrighted work to another but is **innocent of any knowledge of the other party's intended illegitimate use** will not be liable. 3 Melville B. Nimmer, David Nimmer, Nimmer on Copyrights, § 12.04[A][2][b] at 12-76-77 (1996)(emphasis added) (*citing Schuchart & Associates v. Solo Serve Corp.*, 1983 U.S. Dist. LEXIS 15936, 220 U.S.P.Q. 170 (W.D. Tex. 1983).

The grant or denial of summary judgment dismissing claims of contributory liability turns on the ability of the plaintiff to allege sufficient **knowledge** on the part of the defendant. In *Schuchart & Associates v. Solo Serve Corp.*, 1983 U.S. Dist. LEXIS 15936, 220 U.S.P.Q. 170 (W.D. Texas 1983)(emphasis added), the defendant commissioned architectural plans from the plaintiff for one store, then later gave the plans to a second architecture firm and asked it to design a store *like* the first. *Id.* The second firm copied the plans verbatim. *Id.* The court held the defendant **not liable** for contributory infringement because it had not directed the second architecture firm to *copy* the plans and **did not know** of the infringing activity until **after** the copying had occurred. *See also ITSI T.V. Productions v. California Authority of Racing Fairs*, 785 F. Supp. 854, 866 (E.D. Ca. 1992) (emphasis added)(defendant given copies of plaintiff's televised racing programs for broadcast by one who had not obtained the plaintiff's permission; because plaintiff failed to point to any evidence that defendant knew or should have known that the broadcast of the program would infringe plaintiff's copyright, summary judgment granted to defendant).

*Schuchart, supra*, is instructive in that one must actually **know** of the infringing activity **before** it takes place, in order to be charged with contributory liability.  It is up to the plaintiff alleging contributory infringement to prove knowledge on the part of the defendant at the operative time, before the infringing activity took place.  Q makes it very clear in his deposition testimony that he put the images up based on his own perception that he had authority to do so, but that he never discussed the images with Whoo Kid – whether before or after he put up infrgining images of 50 Cent on his website (D/YM p. 45, lns. 11-25, p. 46, lns. 1-23)(Ex. "F").  Q also makes it clear that he never told Whoo Kid he was putting the images up, and that Whoo Kid did not have any **"knowledge"** that he was putting the images up.  *Id.*  If Whoo Kid didn't

know about the infringing activity, he could not have aided Q in perpetrating it; and if Q never told Whoo Kid he was going to take the infringing activity, there was no way for Whoo Kid (who never even went on Q's website) to know about these activities.  Q said, "Whoo Kid did not have any knowledge of the internet" (D/LQO p. 169, lns. 25)(Ex. "C").

Q admits that Whoo Kid never authorized Q to post the specific images of 50 Cent or G-Unit that are in dispute in this case. (F-18, D/LQO p. 165 lns. 20-25, p. 166 lns. 2-10)(Ex. "C"). Thus, Q's contributory infringement claims against Whoo Kid are unavailing because Whoo Kid cannot be said to have materially contributed to Q's admitted infringement of plaintiff's copyright; he did not even know that it was taking place.  Whoo Kid's testimony was that he was only generally aware of the site and never visited the site during the relevant time period; he only knew it was a separate project Q was working on, which at the time showed no apparent promise of becoming a viable business venture.  (D/YM p. 44, lns. 2-10, p. 45, lns. 12-25, p.46, lns. 1-23)(Ex. "F").

There is no allegation anywhere in the record that Whoo Kid knew about the contents of the banners or that 50 Cent's and G-Unit's images appeared on the banners back in 2005. *Id.*  To the contrary, Q's own testimony is that "Whoo Kid did not have any knowledge of the internet" (D/LQO p.169, lns. 25)(Ex. "C").  Instead, Q claims that he worked to promote Whoo Kid and therefore could use images of 50 Cent and G-Unit for the sole purpose of promoting Whoo Kidd. (D/LQO p.70, lns. 5-14)(Ex. "B").  However, nowhere in the claims he makes does Q allege that Whoo Kid had **knowledge** of the unauthorized use of 50 Cent's or G-Unit's images on his website or that Whoo Kid directed or participated in any way in that activity.

### C. The Pleadings Must Be Dismissed for Failure to Satisfy the Minimal Pleading Requirements of F.R.C.P. 8, Since The Pleadings Fail to Allege Sufficient Factual Content to Attribute Liability to the Third Party Defendant.

The aforementioned allegations of direct and contributory copyright infringement would also have to be dismissed for failure to satisfy the minimal pleading standards of Rule 8, F.R. Civ. P.[2]   Rule 8(a)(2) has been construed to require a plaintiff to plead with specificity the acts by which a defendant has committed copyright infringement. A "properly plead [sic] copyright infringement claim must allege . . . by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992) (Conner, J.). It must set out the "particular infringing acts . . . with some specificity. Broad, sweeping allegations of infringement do not comply with Rule 8." *Id.* at 36 n.3 (citation omitted).

Based on the foregoing, Q's Contributory Copyright Infringement claims must be dismissed because he fails to produce a scintilla of evidence that would make out a *prima facie* case that Whoo Kid knew of Q's infringement or materially participated with him in carrying out Q's plan of infringement, and Q fails to even plead sufficient allegations to support his claims.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE TRADEMARK INFRINGEMENT CLAIMS CONTAINED IN COUNT TWO OF THE THIRD PARTY COMPLAINT BASED ON THE DOCTRINE OF LACHES, AND BECAUSE THIRD PARTY PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE FOR TRADEMARK INFRINGEMENT.

### A. Third Party Plaintiff's Trademark Infringement Claim Should Be Dismissed Based on the Doctrine of Laches.

#### 1. Application of the Doctrine of Laches to 15 U.S.C. § 1114(1) Actions.

Third Party Defendant plead in his Second Affirmative Defense that Third Party Plaintiff's claims were time-barred, and plead in his Sixth Affirmative Defense that the Third Party Defendants should be estopped from bringing these claims based on the doctrine of laches. (Third Party Answer). The statute of limitations for a 15 U.S.C. § 1114(1) claim is six-years.

---

[2] The requirements of Rule 8, F.R. Civ. P., have been made applicable to copyright actions despite Rule 81(a)(1), F.R. Civ. P., which states that the Federal Rules of Civil Procedure do not apply to copyright actions under Title 17, U.S.C. *See Foster v. WNYC-TV*, 1989 U.S. Dist. LEXIS 13724, at **10-12 (S.D.N.Y. Nov. 20, 1989) (Keenan, J.).

*Conpco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996). However, a Complaint may be dismissed based on the doctrine of laches where a defendant establishes: (1) an unreasonable delay by the plaintiff in bringing suit; and (2) prejudice to defendant. *See Merrill Lynch Inv. Managers v. Optibase Ltd.*, 337 F.3d 125, 132 (2d Cir. 2003).

Laches bars a claim for relief under federal trademark law where (1) the "plaintiff had knowledge of [the] defendant's use of its marks" and "inexcusably delayed in taking action," and (2) the "defendant will be prejudiced by permitting [the] plaintiff . . . to assert its rights at this time." *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980) (internal citations omitted). The "burden of proving or rebutting the defense [of laches]" is determined by reference to "analogous [state] statutes of limitation. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996). "When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant" to demonstrate the applicability of the laches defense. *Id.* "On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove the circumstances making in inequitable to apply laches to his case. *Id.*

The *Conopco* case, *supra* is instructive.  There, the Court established that the limitations period of six-years for fraud claims should be adopted as applicable to 11 U.S.C. § 1114(1), trademark infringement claims.  In Conopco the distributor of Ragu (Conopco) was claiming that the distributor of Prego (Campbell's Soup) was unfairly boasting to have a thicker sauce, giving them an unfair advantage in the then $1.3 bn pasta sauce market. *Id.* at 189-190.  The Court noted, in analyzing the statute of limitations period that Conopco first became aware of the allegedly false advertising about two-weeks after the Campbell's "thicker and chunkier" campaign first aired. *Id.* at 190.  Yet, Conopco waited five-years to assert its claims against

Campbells, which resulted in Campbells deploying massive resources on this strategy for a half-dozen years, and which precluded the possibility that Campbell's could change course to avoid the claimed 'unfair competition' issue. *Id.* at 192-193.

Ultimately finding that Conopco's claims were time-barred by the doctrine of laches, despite technically falling within the applicable statute-of-limitations period, the *Conopco* court focused on whether the public interest was implicated by the type of claims being brought. In *Conopco*, the Court focused extensively on the public interest component undergirding the trademark infringement laws and the fact that the Lanham Act's prohibition against "misleading advertisement" seeks to prevent "consumer confusion and deception". *Id.* at 193. The Court noted that, "the trademark laws protect … the public interest in not being misled." *Id. citing to Scarves By Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976). The *Conpco* Court noted that the type of health and safety concerns, and other public interest factors, that would be present, for exmaple, in cases in the pahrmaceutical sector pertainting to the advertising of over-the-counter medication were not present in a case over who had the thicker pasta sauce. *Id.* at 194.  Thus, laches was appropriate where there was no public interest at play.

### 2.   Application of the Laches Doctrine to the Facts of This Case.

The allegations in Count 2 of the Complaint, like Count 1 for Copyright Infringement are that Whoo Kid "induced, caused, or materially contributed to" Q's use of 50 Cent's image on the WSHH website. (Third Party Complaint ¶ 26).  Thus, the same accrual period of 2007 applies to these claims.  However, as in *Conopco*, it was not reasonable for Q to wait over 3 years from accrual, and more than a 1 year and 4 months from the filing of the Complaint to bring these claims.

Whoo Kid has been prejudiced by Q's 3-year delay in raising his Contributory Trademark Infringement claims. It is clear that Q only brought these claims in order to create a potential justification for his clear violation of 50 Cent's trademark in his likeness.  It is equally clear that the facts are devoid of any direct allegation that Whoo Kid "authorized" the use of anyone's image other than his own. *See* F-34 (D/LQO p. 171 lns. 21-25, p.172 lns. 7-8)(Ex. "C"). Rather the facts indicate that Whoo Kid only "authorized" the use of his own image. *Id*. At best, Q's allegations indicate that he made an error or mistake of law, and misunderstood that Whoo Kid lacked authority to provide a license for the images of 50 Cent and G-Unit. It is axiomatic that ignorance of the law does not relieve one from responsibility for a violation of the law.

Taking a more cynical view of Q's motives, Q simply invented this convoluted contributory trademark infringement theory, premised on *reverse apparent authority* (which is not a concept existing in the law of agency), despite an utter lack of factual or legal support, simply to strike back at an individual who is close to 50 Cent (the individual who initiated this lawsuit against Q). Such a frivolous filing by Q, made in bad faith, out of a spirit of maliciousness and vindictiveness, should not be tolerated, where, as here, there is no factual or legal basis for Q's claims against Whoo Kid.  In such a case, attorney's fees and sanctions are warranted.

To the extent that there is any conceivable set of facts that could be inferred from the pleadings from which a jury could find that Whoo Kid participated in Q's infringement of the 50 Cent and G-Unit trademarks, it would *not* be a *reasonable* reading of those facts and that law. Thus, making all *reasonable* inferences in favor of the nonmoving party, no reasonable jury could find that Whoo Kid participated in trademark infringement in this case.

Laches operates to distinguish those injuries which are grievous and deserving of immediate attention from those that are after-thoughts, lacking any real substance, which are inevitably brought for some ill-begotten purpose, and which by nature tend to be vexatious exercises designed to annoy, delay and harass.  Were Q's allegations serious, and were real damages at play, they would have been raised with all deliberate haste.

Based on the foregoing, Q's Contributory Trademark Infringement claims must be dismissed because they are time-barred through application of the doctrine of laches, and attorney's fees are appropriate for Whoo Kid's defense of these claims.

### B. Third Party Plaintiff Has Failed to Establish a *Prima Facie* Case for Trademark Infringement.

To prevail on a claim for trademark infringement, a plaintiff must show that the defendant: (1) without permission, copied, reproduced, or imitated the plaintiff's (2) registered trademark in commerce (3) as a part of the sale or distribution of goods or services (4) and that such use is likely to cause confusion between the two marks. *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998); *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993). Plaintiff has clearly established all of the elements of trademark infringement against Defendant, sufficient for Summary Judgment to be granted in Plaintiff's favor (Plaintiff's Brief pp. 19-21). The only potential defense borne out in discovery was Q's self-serving claims that he was authorized or had permission to use 50 Cent's trademark. (Answer, DE-7).

Unable to argue that he ever received permission from 50 Cent directly (F-13, D/LQO, p. 54, 16-22)(Ex. "B"), because he never even discussed the use of 50 Cent's image with the man himself (F-14, D/LQO p.153 lns. 13-20)(Ex. "C"), Q instead makes the novel argument that he received permission from Whoo Kid (regardless of the fact that it is never established anywhere

13

in the record and no proof is even presented in an effort *to demonstrate* that Whoo Kid had actual or apparent authority to grant such an actual or implied license). Q freely admits that Whoo Kid never expressly authorized Q to post the specific images of 50 Cent or G-Unit that are in dispute in this case. (F-18, D/LQO p.165 lns. 20-25, p. 166 lns. 2-10)(Ex. "C").  What is more striking is Q's admission that he never even discussed the posting of the images with Whoo Kid. (D/YM p. 45 lns. 11-25 p. 46 lns. 2-15)(Ex. "F").  Certainly, for Whoo Kid to grant Q permission to post images, there must be some such signifying verbal or written communication or act flowing from Whoo Kid.  At the risk of being impertinent, I think I can safely represent to the Court that I am not aware of any cases where trademark infringement was successfully proved on the basis of telepathy, telekinesis or astral projection – certainly we do not live in a world where someone can become liable under the law without word or deed.

Q's theory is that he was somehow authorized by Whoo Kid to use 50 Cent's image to promote Whoo Kid. (F-32, D/LQO p.56, lns 19-22)(Ex. "C"). Q's creative Third Party Claim (which is also his sole means of defense), even if it were proven, utterly fails as a matter of law, because Whoo Kid was not even authorized expressly or impliedly to license the images of 50 Cent or G-Unit (F-6).  I believe that Plaintiff's Counsel addresses this in greater depth in her brief, and not wanting to be repetitive, I will not duplicate her efforts; but it is first-year, day-one hornbook law that "apparent authority" must be derived from some authorization **from the principal**, not the agent. *See, e.g., Cooperative Agricole Groupement De Producteurs Bovins De L'Ouest v. Banesto Banking,* F. Supp., No. 86-8921, 1989 WL 82454 (S.D.N.Y. July 19, 1989); *3M Co. v. Rollitt LLC,* No. 06-01225, 2008 WL 8820473 (N.D. Cal. May 14, 2008)(implied license does not arise out of unilateral expectations of a third party.).

Whoo Kid was not an employee on the payroll of either 50 Cent or G-Unit, he did not have a contract with them, and he never held himself out as their agent. (F-6). Whoo Kid was simply an independent contractor who hosted after-parties and deejayed for 50 Cent when he was on the road. *Id.*

As stated in the copyright section, there is no allegation that Whoo Kid even had **knolwedge of** the infringing activity. *See Livnat v. Shai Bar Lavi*, 1998 U.S. Dist. LEXIS 917, *8-9, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (Sweet, J.)(requiring **"actual knowledge"** for a copyright or trademark infringement action to create vicarious liability in a third party). Thus, Third Party Plaintiff has failed to make out a *prima facie* case for contributory trademark infringement against the Third Party Defendant and Summary Judgment dismissal is appropriate.

### C. The Pleadings Must Be Dismissed for Failure to Satisfy the Minimal Pleading Requirements of F.R.C.P. 8, Since The Pleadings Fail to Allege Sufficient Factual Content to Attribute Liability to the Third Party Defendant.

As with the Copyright Claims in Count 1, the aforementioned allegations of direct and contributory trademark infringement should also be dismissed for failure to satisfy the minimal pleading standards of Rule 8, F.R. Civ. P.  Rule 8(a)(2) has been construed to require a plaintiff to plead with specificity the acts by which a defendant has committed trademark infringement. A "properly plead [sic] copyright [or trademark] infringement claim must allege . . . by what acts during what time the defendant infringed the [trademark]." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992) (Conner, J.).

Given the most liberal reading of Third Party Complaint, Third Party Plaintiff's Lanham Act claim is based on no more than an alleged copyright violation and is impermissibly duplicative of his claim for relief under the Copyright Act. *See Marvullo v. Gruner & Jahr,* 105 F. Supp. 2d 225, 232-33 (S.D.N.Y. 2000).

Moreover, Third Party Plaintiff does not allege that Whoo Kid participated in the decision to place these images on the WSHH masthaead banner.  Third Party Plaintiff does not even allege telpathic involvement. Third Party Plaintiff utterly fails to allege "the requisite affirmative action of falsely claiming originality beyond that implicit in any allegedly false copyright [trademark]" and his claim should be dismissed. *Weber*, 63 F. Supp. 2d at 464; *see also Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 2000 WL 351220, at *4 (S.D.N.Y. 2000) (Sweet, J.) (dismissing Lanham Act claim and stating "any claim of false originality on the in this action does not venture beyond that implicit in any allegedly false copyright.").

Based on the foregoing, Q's Contributory Trademark Infringement claims must be dismissed because he fails in his pleadings to even allege a scintilla of evidence that would make out a *prima facie* case that Whoo Kid knew of Q's infringement or materially participated with him in carrying out Q's plan of infringement.

**III.  SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE INVASION OF PRIVACY CLAIMS UNDER THE NEW YORK CIVIL RIGHTS LAW CONTAINED IN COUNT THREE OF THE THIRD PARTY COMPLAINT BECAUSE THE APPLICABLE ONE-YEAR STATUTE OF LIMIATIONS EXPIRED PRIOR TO INITIATION OF THE CLAIM AND BECAUSE THIRD PARTY PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE FOR INVASION OF PRIVACY.**

**A.  Third Party Plaintiff's New York Civil Rights Claim is Time-Barred.**

Third Party Defendant plead as its Second Affirmative Defense that Third Party Plaintiff's claims were time barred. (Third Party Answer). Civil Procedure Law and Rules Section 215(3) (McKinney 2012) states pertinently:

> "The following actions shall be commenced within one year… (3) an action to recover damages for … or a violation of the right to privacy under section fifty and fifty-one of the civil rights law."

C.P.L.R. § 215(3).  As with Third Party Complaint's allegations for Copyright Infringement, Third Party Plaintiff's Civil Rights Claims merely allege that Whoo Kid "induced, caused, or

16

materially contributed to" Q's use of 50 Cent's image on the WSHH website. (Third Party

Complaint ¶ 31). Thus, the same accrual date will apply here.

The statute of limitations begins to run when the plaintiff has knowledge of, or with

reasonable diligence should have discovered the critical facts of false designation. *See Maurizio*,

2000 WL 97666, at *6; *Fort Knox Music, Inc. v. Baptiste*, 47 F. Supp. 2d 481, 483 (S.D.N.Y.

1999), remanded on other grounds, 203 F.3d 193 (2d Cir. 2000); *Berns v. EMI Music Publ'g,

Inc.*, 1999 U.S. Dist. LEXIS 17541, No. 95 Civ. 8130, 1999 WL 1029711, at *9 (S.D.N.Y. Nov.

12, 1999); *Rosner v. Codata Corp.*, 917 F. Supp. 1009, 1019 (S.D.N.Y. 1996).

Here, Q was put on notice of his infringing conduct in 2007 at the latest, by Third Party

Defendant argues here that through reasonable diligence, he should have known his conduct was

infringing much earlier, at some time in 2005.

## B. Third Party Plaintiff Has Failed to Establish a Prima Facie Case for A Civil Rights Law Violation.

New York Civil Rights Law provides that:

> "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."

N.Y. Civ. Rights § 50 (McKinney's 1992). Section 51 of the Civil Rights Law authorizes the

maintenance of an invasion of privacy action only against a person who "used" a plaintiff's

image. N.Y. Civ. Rights § 51;  *Anderson v. Strong Memorial Hospital*, 140 Misc. 2d 770, 531

N.Y.S.2d 735 (Sup. Ct. Monroe Cty. 1988).  It is undisputed that Whoo Kid did not place the

images in question on the WSHH website or make any other use of these images. (D/LQO p.14,

lns. 2-11 p. 56, lns. 8-10))(Ex. "C").

Based on the foregoing, and F.R.C.P. 8(a)(2), Q's Civil Rights Law claims must be

dismissed because he fails to point to a scintilla of evidence that would make out a *prima facie*

case that Whoo Kid "used" 50 Cent's or G-Unit's image or placed them on the infringing platform – the WSHH website.

IV.    **SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE FALSE DESIGNATION CLAIMS CONTAINED IN COUNT FOUR OF THE THIRD PARTY COMPLAINT BECAUSE THE APPLICABLE THREE-YEAR STATUTE OF LIMITATIONS EXPIRED PRIOR TO INITIATION OF THE CLAIM AND BECAUSE THE THIRD PARTY PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE FOR FALSE DESIGNATION.**

### A. Third Party Plaintiff's False Designation Claim is Time-Barred.

Third Party Defendant plead as its Second Affirmative Defense that Third Party Plaintiff's claims were time barred. (Third Party Answer). The Statute of Limitations for a false endorsement/false designation of origin claim under 15 U.S.C. § 1125(a) is 3 years. Lorenzo De Medici v. Lorenzo De Medici, Inc., 101 A.D.2d 719, 720 (App. Div. 1st Dep't 1984).

Here, the allegations in the Third Party Complaint are: (1) that Whoo Kid used the "worldstarhiphop" logo on mixtapes (Third Party Complaint ¶ 35): (2) that Whoo Kid's alleged use of that logo constitutes false endorsement (Third Party Complaint ¶ 37); and (3) that Whoo Kid's use of the logo was done with a conscious disregard to Q's rights (Third Party Complaint ¶ 38).   Unlike each of the other claims in the Third Party Complaint which seek contribution against any recovery by Plaintiffs, this cause of action is premised on "reputational damages" suffered by Q and WSHH and an unspecified monetary loss or injury. (Third Party Complaint ¶ 39).   The only infringing mixtape identified is the mixtape "Are You a Window Shopper," which allegedly had the "worldstarhiphop" logo on the back of it. (Third Party Complaint ¶ 36).   The fact is Q *wanted* Whoo Kid to place the logo on Whoo Kid's mixtapes, which were the mixtapes of the #1 mixtape DJ in the industry, and that Q *sought out* opportunities to distribute these mixtapes in an effort to drive traffic to his site, based on a profit motive. *See* F-49 and F-53.

It is undisputed that this mixtape was originally released in 2005. (D/Q, May 3, 2011, p. 47, ln. 25, p. 48, lns. 2-3)(Ex. "B").  The Third Party Complaint was filed on October 28, 2010. (Docket Entry 25).  Thus, this cause of action is clearly time-barred and Summary Judgment should be granted in favor of Whoo Kid dismissing Count Three on that basis.

### B. Third Party Plaintiff Has Failed to Establish a *Prima Facie* Case for False Designation.

The Lanham Act § 43(a)(1) imposes liability for "any false designation of origin, false or misleading description of fact, or **false or misleading representation of fact**" that:

> "(A) is **likely to cause confusion**, or to cause mistake, **or to deceive** as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, **misrepresents the** nature, characteristics, qualities, or geographic **origin** of his or her or another person's goods, services or commercial activities.

15 U.S.C. § 1125(a)(1)(A)-(B) (emphasis added). Claims under section 43(a) are styled as either false representation under subsection (A) or false advertising under subsection (B). Section 43(a) targets "actions like trademark infringement that deceive consumers and impair a producer's goodwill." *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 32, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003). Thus, section 43(a) forbids, inter alia, "reverse passing off"—when a "producer misrepresents someone else's goods or services as his own." *Dastar*, 539 U.S. at 28 n.1, 32.  The touchstone of such claims is a likelihood of consumer confusion as to product authenticity or origin. *See, e.g., EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000); *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 174 (2d Cir. 2000); *Streetwise Maps, Inc. v. Vandam, Inc.,* 159 F.3d 739, 742-43 (2d Cir. 1998).

It is important to note that *Are You a Window Shopper* was released in 2005. D/Q, May 3, 2011, p. 47, ln. 25, p. 48, lns. 2-3)(Ex. "B").  The WSHH website had just been launched, but went down due to hacking and did not go back online until April 2007, and was not fully re-launched until early 2008, by which time *Are You a Window Shopper* was old news and was not viable or relevant or available for widespread distribution in the relevant marketplace. (D/LQO p. 54 lns. 10-19)(Ex. "C"). The WSHH "word mark" was not submitted for registration until 5-years later on March 31, 2010 (about six (6) months before the Third Party Complaint was filed), and was not registered until July 26, 2011.  Thus, at the time in early 2005 that the WSHH logo allegedly appeared on Whoo Kid's lone mixtape *Are You a Window Shoppper*, there was no registered trademark, there was no website that was running and available to the public, and there was no possibility of confusing Whoo Kid with WSHH or vice versa.

Q has not met his burden of proof in demonstrating that the WSHH mark, which was unregistered at all relevant times, possessed the necessary secondary meaning to support a § 43(a) claim.  Evidence of the degree to which the mark has acquired secondary meaning is critical to determining whether there exists a likelihood of confusion sufficient to warrant relief. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 821 (9th Cir. 1980) ("The stronger the evidence of secondary meaning, the stronger the mark, and the more likely is confusion."); *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116, 59 L. Ed. 2d 75, 99 S. Ct. 1022, 200 U.S.P.Q. (BNA) 832 (1979); *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), cert. denied, 368 U.S. 820, 7 L. Ed. 2d 25, 82 S. Ct. 36, 131 U.S.P.Q. (BNA) 499 (1961).  This lack of evidence, and of any attempt by Q to plead facts supporting the validity and meaning underlying the trademark in question, which would then potentially make the mark worthy of protection, is absolutely fatal to his claims.

Q's False Designation claims must also be dismissed because Q fails to point to a scintilla of evidence that would make out a *prima facie* case that Whoo Kid "used" the WSHH logo and that such "use" would be likely to confuse the consuming public about the origin of the mixtapes in question or that Q would have been damaged by an association with Whoo Kid.  To the contrary, Q goes to great lengths to say that Q and WSHH were in the business of promoting Whoo Kid. (D/LQO p. 70 lns. 5-14)(Ex. "C").  A litigant cannot, on the one hand, claim to be using their commercial platform to promote someone (where it provides a perceived defense), and on the other hand, claim that the public would be "deceived" if the two parties were associated (where he seeks to bring another party to the table to share in his substantial liability as an infringer).  In his testimony, Q repeatedly talked about his "affiliation" with Whoo Kid, which he publicly touted, and which he considered an asset. (D/LQO p.56, lns 19-22, p.169, 19-21, p.192, lns. 9-14)(Ex. "C").  Q even at one point claims to have been an employee of Whoo Kid, who he is now suing for "passing off" the WSHH trademark with a false endorsement/false designation of origin. (D/LQO p. 73 lns. 14-24, p. 74, lns. 2-14)(Ex. "C").  If his statements were credited that he was in the business of "promoting Whoo Kid" then there would be no confusion or damage or lack of authority for "Whoo Kid" to promote him back by placing a logo on the back of a mixtape, in recognition of WSHH's role as a distributor of Whoo Kid's work product.

To state a claim for false designation of goods a plaintiff must allege that the defendant has falsely represented the source of goods or services, the approval or endorsement given to goods or services by some person or entity, or some other inherent quality of the goods or services at issue. *See Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979); *Vidal Sassoon, Inc. v. Bristol Myers Co.*, 661 F.2d 272, 277 (2d Cir. 1981); *Decorative Aides Corp. v. Staple Sewing Aides Corp.*, 497 F.Supp. 154, 159 (S.D.N.Y.

1980) aff'd 657 F.2d 262 (2d Cir. 1981).  Q admits that he **endorsed** and **promoted** Whoo Kid. (D/LQO p.70, lns. 5-14)(Ex. "B").  There is no allegation that placing the logo on the back of a mixtape would be deceive the consumers of the mixtapes or lead them to believe it was a product distributed by WSHH – no one was interested in WSHH mixatpes – they were not in the business of distributing mixtapes – and they were not even in business at the relevant time period.  Thus, there is no false advertising or "reverse passing off" case.  There is also no basis for a false representation case, even if the mark were viable, because there is no allegation anywhere of what specific "confusion in the marketplace" or what "false representation" was made that would anchor that claim as required under Section 43(a).

### C. The Pleadings Must Be Dismissed for Failure to Satisfy the Minimal Pleading Requirements of F.R.C.P. 8, Since The Pleadings Fail to Allege Sufficient Factual Content to Attribute Liability to the Third Party Defendant.

Q's bare-bones, skeletal pleadings leave the Court to imagine how Whoo Kid has falsely represented the WSHH website (which was not even up and running until 3-years after *Are You a Window Shopper* was released) or what would constitute a false designation of origin on these facts.

The Third Party Complaint is bereft of even a conclusory statement to the effect that the consuming public would be "deceived" by the claimed false endorsement or false desigantion of origin, or any identification of the statement that constitutes a "false representation" and the Third Party Complaint utterly fails to satisfy the minimal pleading standards of Rule 8 of the Federal Rules of Civil Procedure. (Third Party Complaint ¶ 37).  Mr. Zarin is not a neophyte attorney who lacks the skill to properly draft a complaint, so the Court can only conclude from the paucity of information plead that there is simply no fact that could be plead that would support Q's claims.

Based on the foregoing, Summary Judgment should be granted in Third Party Defendant's favor dismissing the false designation claims in Count Four of the Third Party Complaint, and attorney's fees should be awarded to Third Party Defendant for having to respond to and defend this frivolous lawsuit.

**V.     THIRD PARTY DEFENDANT IS ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER SECTION 35(A) OF THE LANHAM ACT, ASSUMING ALL OF THE CLAIM IN THE THIRD PARTY COMPLAINT ARE DISMISSED, WHICH MAKES THIRD PARTY DEFENDANT A PREVAILING PARTY; EXCEPTIONAL CIRCUMSTANCES ARE PRESENT SINCE THIRD PARTY PLAINTIFF HAS FAILED TO PRESENT A SHRED OF EVIDENCE IN SUPPORT OF HIS CLAIMS AGAINST THIRD PARTY DEFENDANT AND WHERE THESE CLAIMS ARE CLEARLY BROUGHT ONLY FOR PURPOSES OF HARASSMENT AND WHERE IT IS APPARENT THESE CLAIMS WERE BROUGHT IN BAD FAITH IN A "HAIL MARY" ATTEMPT TO CREATE AN ISSUE OF FACT THAT MIGHT DELAY AN INEVITABLE LIABILITY AWARD TO PLAINTIFF'S IN THE UNDERLYING ACTION.**

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  Although the term "exceptional" is not defined in the statute, this statute generally is used to award attorneys' fees to a prevailing plaintiff when the defendant's trademark infringement is "malicious, fraudulent, or willful." *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000); *Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d 1295 (9th Cir. 1998). Although less common, prevailing defendants may be awarded attorneys' fees pursuant to this statute also if the third party plaintiff's action was **"groundless, unreasonable, vexatious, or pursued in bad faith."** *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1112 (9th Cir. 1999)(emphasis added); *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997).  This Court interprets the "exceptional circumstances" requirement "rather narrowly." *Classic Media*, 532 F.3d at 990; *Gracie*, 217 F.3d at 1071.  Moreover, "the Lanham Act permits, but does not mandate an award of attorneys' fees

to a prevailing party in 'exceptional circumstances.'" *Gracie*, 217 F.3d at 1071 (emphasis in original).

**A. Third Party Defendant Has Made a Sufficient Showing of "Exceptional Circumstances" Warranting Attorney's Fees Because It Has Been Demonstrated That Each of the Claims is Patently Without Merit and Devoid of Any Factual Basis and Is Otherwise Replete With Fraud and Bad Faith, Because the Allegations Appear to Be Made At This Late Hour Merely To Lash Out At A Friend Of The Plaintiff (50 Cent) In Retaliation For The Filing of 50 Cent's Infringement Lawsuit And Not To Seek Relief For A True Grievance Against Third Party Defendant.**

Section 35(a) of the Lanham Act provides that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a)(trademark cases); 15 U.S.C. § 505 (copyright cases). In the Second Circuit, an award of fees is justified under the Lanham Act only when there is a showing of fraud or bad faith. *Conopco v. Campbell Soup Co.*, 95 F.3d 187, 194-95 (2d Cir. 1996). This standard applies whether the prevailing party is a plaintiff or defendant. *Id.* at 195. The burden is on the third party defendants to show that the case is exceptional such that it warrants an award of fees. *See Conopco v, Campbell Soup Co.*, 1995 U.S. Dist. LEXIS 9331 (S.D.N.Y. 1995), *aff'd Conopco*, 95 F.3d at 194-95.  The legal standards for attorneys' fees in copyright and trademark actions are *pasi passu*.

"*Reasonableness* is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted." *Matthew Bender & Co. v. West Publ'g Co.*, supra, 240 F.3d at 123 (emphasis added). The court may, therefore, award a prevailing third party defendant attorneys' fees if it was **objectively unreasonable** for plaintiff to bring a copyright/trademark action. *See Pannonia Farms, Inc. v. USA Cable*, 03 Civ. 7841 (NRB), 2004 U.S. Dist. LEXIS 15737, 2004 WL 1276842 at *7 (S.D.N.Y. June 8, 2004) (emphasis added).  A third party plaintiff's claim of copyright/trademark infringement are objectively unreasonable when the claim is "clearly without merit or otherwise patently devoid of [a] legal or factual

24

basis." *Penguin Books U.S.A. v. New Christian Church of Full Endeavor, Ltd.*, 96 Civ. 4126 (RWS), 2004 U.S. Dist. LEXIS 5648, 2004 WL 728878 at *3 (S.D.N.Y. Apr. 6, 2004).

Third Party Plaintiff's litigation of each of its claims was objectively unreasonable, patently devoid of any factual or legal basis, and "replete with fraud and bad faith" such that Third Party Defendant is entitled to an award of attorney's fees and costs of suit.  As an initial matter, it was incumbent on the Third Party Plaintiff, who slept on his rights for between 3 and 6 years, depending on which claim we are talking about, to recognize that each and every count of the Third Party Complaint was time-barred, with most of the statute of limitations periods being blown outright, and the rest most probably barred through application of the doctrine of laches.

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Second Circuit has interpreted "exceptional cases" to include instances where there is evidence "of fraud or bad faith." *Twin Peaks Productions, Inc. v. Publications In-tern., Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993); *accord Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003). The standard for awarding fees to a prevailing defendant is the same as that for a prevailing plaintiff. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194-95 (2d Cir. 1996); *accord New Sensor Corp. v. CE Distribution LLC*, 367 F. Supp.2d 283, 286-87 (E.D.N.Y. 2005).

A finding of bad faith is warranted when a third party plaintiff's trademark infringement claim is entirely without merit and was asserted for improper purposes such as harassment or delay. *Juicy Couture, Inc. v. L'Oreal USA, Inc.,* 04 Civ. 7203 (DLC), 2006 U.S. Dist. LEXIS 64393, 2006 WL 2591478 at *4 (S.D.N.Y. Sept. 11, 2006) *citing Baker v. Health Mgmt. Sys., Inc.*, 264 F.3d 144, 149 (2d Cir. 2001). *See New Sensor Corp. v. CE Distribution LLC*, *supra*, 367 F. Supp.2d at 288 (inferring bad faith and awarding fees where a third party plaintiff "knew

or should have known that its claims were not well grounded in fact" such that "one can only speculate about the motives which prompted its suit").

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Second Circuit has interpreted "exceptional cases" to include instances where there is evidence "of fraud or bad faith." *Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993); *accord Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003). The standard for awarding fees to a prevailing third party defendant is the same as that for a prevailing third party plaintiff. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194-95 (2d Cir. 1996); *accord New Sensor Corp. v. CE Distribution LLC*, 367 F. Supp.2d 283, 286-87 (E.D.N.Y. 2005).

An inference of bad faith is warranted when a third party plaintiff's copyright/trademark infringement claim is entirely without merit and **it can be inferred that it was asserted for improper purposes such as harassment or delay.** *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 04 Civ. 7203 (DLC), 2006 U.S. Dist. LEXIS 64393, 2006 WL 2591478 at *4 (S.D.N.Y. Sept. 11, 2006)(emphasis added) *citing, Baker v. Health Mgmt. Sys., Inc.*, 264 F.3d 144, 149 (2d Cir. 2001). *See New Sensor Corp. v. CE Distribution LLC*, 367 F. Supp.2d at 288 (inferring bad faith and awarding fees where third party plaintiff "knew or should have known that its claims were not well grounded in fact" such that "one can only speculate about the motives which prompted its suit.").

In this case there is no direct evidence that Third Party Plaintiff pursued its copyright/trademark infringement claims in bad faith. However, there is ample circumstantial evidence of Third Party Plaintiff's bad faith. Firstly, Scott Zarin, Esq. is an experienced attorney who is familiar with the pleadings requirements and the procedural rules applicable to claims that

are jurisdictionally within the ambit of this Court.  Mr. Zarin (and by extension his client) must be charged with the responsibility for researching the applicable statute of limitations periods applicable to his claims, and the factual support for those claims, and advising his client of them, as well as advising his client of the applicable statutes of repose and the doctrine of laches, all of which might bar his client's claims.  It is then incumbent on the client if the news is that he has no case, to face reality, rather than to ensnare an innocent party in a protracted and costly litigation, where to do otherwise could only be interpreted by this Court as a malicious act taken in utmost bad faith.

## **Attorney's Fees Are Warranted on Third Party Plaintiff's Copyright Claims**

The Contributory Copyright Infringement allegations against Whoo Kid in Count 1 of the Third Party Complaint are objectively unreasonable and clearly without merit because Q fails to allege that Whoo Kid "materially contributed" to the placement of the specific images in question. It is undisputed that Whoo Kid never authorized Q to post the specific images of 50 Cent or G-Unit that are in dispute. (F-18, D/LQO p.165 lns. 20-25, p. 166 lns. 2-10)(Ex. "C"). It is undisputed that Whoo Kid never **had knowledge of** the postings on the internet. (D/LQO p. 169 lns. 25)(Ex. "C")("Whoo Kid does not have any knowledge of the internet").  It is also undisputed that Whoo Kid never gave express or implied permission for posting the images (which he could not have done without knowing about them). (D/LQO p. 171 lns. 21-25, p.172 lns. 7-8)(Ex. "C").  As argued above, it would have required telepathy, astral projection or telekinesis for Whoo Kid to have been involved in posting images since posting images [and the WSHH banner in general] was never even discussed with him. (D/LQO p. 153 lns. 13-20)(Ex. "C")(never discussed posting images with Whoo Kid); D/LQO p. 170 lns. 23-24)(Ex. "C");

(D/YM p. 45 lns. 11-25 p. 46 lns. 2-15)(Ex. "F")(never had a conversation about posting images with Whoo Kid).

      Given this lack of factual support it is clear that there is no objectively reasonable basis for a Contributory Copyright Infringement claim against Whoo Kid, that such a claim was devoid of any factual or legal support and that, therefore, it can only be inferred that these claims were brought with improper motives.  The Contributory Copyright Claims alleged in Count 1 of the Complaint are clearly without merit and attorney's fees are warranted. 15 U.S.C. § 505.

**Attorney's Fees Are Warranted Under the Lanham Act**

      As to the Third Party Plaintiff's Contributory Trademark Infringement and Section 43(a) false designation/false advertising claims in Counts 2 and 4 of the Third Party Complaint, Third Party Plaintiff either proceeded with his claims knowing that they were utterly without merit or Third Party Plaintiff failed to perform the minimal legal analysis required by Fed.R.Civ.P. 11, which would have clearly shown that the claim was time-barred by the applicable 3-year statute of limitations period in effect for these claims, in addition to being wholly without factual support in the record.

      Third Party Defendants in a Lanham Act action are not entitled to attorney's fees merely because third party plaintiff's claim was meritless and unable to survive summary judgment. *Elements/Jill Schwartz, Inc. v. Gloriosa Co.*, 01 Civ. 904 (DLC), 2002 U.S. Dist. LEXIS 18011, 2002 WL 31133391 at *3 (S.D.N.Y. Sept. 26, 2002). However, pursuit of a legal theory that third party plaintiff either knew or should have known was untenable implies bad faith warranting an award of fees under the Lanham Act. *Nat'l Distillers Prods. Co. v. Refreshment Brands, Inc.*, 00 Civ. 8418 (NRB), 2002 U.S. Dist. LEXIS 13962, 2002 WL 1766548 at *1-2 (S.D.N.Y. July 30, 2002) ("Where . . . the prevailing party is a third party defendant, the cases

demonstrate that the third party plaintiff's pursuit of patently frivolous claims is circumstantial evidence of bad faith.").

Third Party Plaintiff brought its trademark infringement claim alleging violations of Section 43(a) of the Lanham Act, which prohibits a false designation of the origin of goods. 15 U.S.C. § 1125(a). In *Dastar Corp v. Twentieth Century Fox Film Corp.*, the Supreme Court held that Section 43 (a) does not apply to claims involving a failure to attribute or credit the origin of creative work. 539 U.S. at 30-37. Rather, the Court held that such claims are cognizable under the Copyright Act and not the Lanham Act. 539 U.S. at 33; *see also Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp.2d 259, 263 (S.D.N.Y. 2005)("The right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition. The failure to credit the true author of a copyrighted work is not a false designation of origin, but a violation of copyright."), *citing Dastar Corp. v. Twentieth Century Fox Film Corp.*, *supra,* 539 U.S. at 33; *Slice of Pie Prods., LLC v. Wayans Bros. Entm't*, 392 F. Supp.2d 297, 313 (D. Conn. 2005) ("[T]he clear import of Dastar is that any protection for the misappropriation of [e.g., a television show's] content comes from the Copyright Act, not from the Lanham Act."); *see also Smith v. New Line Cinema*, 03 Civ. 5274 (DC), 2004 U.S. Dist. LEXIS 18382, 2004 WL 2049232 at *4 (S.D.N.Y. Sept. 13, 2004) (dismissing, based on Dastar, a Lanham Act claim alleging failure to credit the true author of a screenplay).

Here the Court is faced with a reverse misappropriation claim on the independent trademark infringement claims in Count Four of the Third Party Complaint.  Searching for a meaning to the trademark infringement allegations in the Third Party Complaint, one can only conclude that Q's complaint is that Whoo Kid associated his mixtapes with WSHH without permission.  Since WSHH had no valid trademark rights, given that the Court is presented with

no registered trademark in 2005, a non-existent website in 2005, lack of any proof of any consumer interaction or profit in 2005, and with the Third Party Plaintiff leaving the Court with not a shred of evidence or testimony as to secondary meaning in 2005, it is somewhat difficult to imagine what perceived goodwill Third Party Plaintiff claims was being damaged or how Q would prove that dilution of goodwill at trial. If you have reduced the sauce down to an empty pan, there is no way to dilute the sauce further. Regardless of the lack of proof of any goodwill or any explanation of the perceived dilution that allegedly occurred, Whoo Kid's inclusion of a logo on the back of a mixtape cannot be interpreted as a claim that the origin of the mixtapes was from WSHH.

One could stretch their mind to imagine as one possible basis for Q's claims that Q is complaining that people thought WSHH endorsed the mixtapes, and thereby that this allegedly unauthorized endorsement soured the viewing/listening public (which are not necessarily the same people) to the nonexistent WSHH website. Apparently, Q wishes to now argue that even though his sole purpose in life and business in 2005 was to "promote Whoo Kid," somehow Whoo Kid was such a bad character that any "affiliation" with him was harmful to business and detrimental to his trademark. Does this make sense?

Not when put side-by-side with Q's defense that he was authorized to post images of 50 Cent on his website *only because* it was out of "loyalty" to Whoo Kid and a desire to "promote Whoo Kid." (D/LQO p. 56, lns 19-22, p. 56 lns. 23-25, p. 57 lns. 2-7, p. 70 lns. 5-14, p. 169 lns. 25)(Ex. "C"). This type of alternative pleading, where the Defendant/Third Party Plaintiff tries to use his affiliation with Whoo Kid as a shield to defend himself (where he claims that in promoting Whoo Kid he had *carte blanche* to post infringing images of anyone Whoo Kid knew) and on the other hand, uses that same fact as a sword to lance Whoo Kid (for apparently being

detrimental to his brand at WSHH) is permissible at the Motion to Dismiss stage, but is wholly inappropriate once the facts have been unearthed through discovery.  It is Third Party Plaintiff's burden to prove his case.  He must commit to one set of facts.  He cannot prove his case by twisting the facts as he pleases and contorting them to meet his desired ends. Either Q was promoting Whoo Kid and pleased to have his endorsement and support, or Q was disgusted to be associated with Whoo Kid, and WSHH was losing business because of a perceived affiliation with him. Whatever legal import must be drawn as a consequence, Q and Whoo Kid were either affiliated or they weren't.  Q cannot have it both ways, and frankly, it only damages his case to try to have it both ways.

Either Q's Trademark Infringement claim against Whoo Kid is really a reverse misappropriation claim, which is in essence a duplicative Copyright Infringement claim foreclosed by *Dastar, supra*, or it is devoid of factual support, because there has not been proof of valid trademark rights and a dilution of those rights based on Whoo Kid's acts.  Ultimately, Q will have to commit to one of these theories.  Regardless of which theory he chooses his pleadings are hopelessly flawed and the record is devoid of support for his claims.  If the Court agrees with this characterization of the record, and if one charges Q with knowledge of the frivolous and untenable nature of his claims, it naturally follows that an inference of bad faith is warranted and that attorney's fees should be awarded to Whoo Kid for having to answer and defend this frivolous action.  Third Party Defendant has made a sufficient showing that the Third Party Complaint was groundless, unreasonable, vexatious, and pursued in bad faith sufficient to support an award of attorney's fees and costs in this case.

**Conclusion**

For the foregoing reasons Summary Judgment should be granted dismissing the Third Party Complaint in its entirety, awarding all attorney's fees and costs of suit to Third Party Defendant, and for such other and further relief as the Court deems just and proper.


Dated: New York, New York              Respectfully submitted,
       March 28, 2013

                                       FAZZIO LAW OFFICES

                                       By:  s/ John P. Fazzio
                                            JOHN P. FAZZIO

                                       26 Broadway, 21st Floor
                                       New York, NY 10004
                                       Phone:  (212) 785-5449
                                       Fax:  (917) 591-1803
                                       Cell: (609) 868-8953
                                       jfazzio@fazziolaw.com

                                       *Attorneys for Third Party Defendant*
                                       *Yves Mondesir p/k/a "Whoo Kid"*

32