As the Second Circuit has made abundantly clear, and as Defendant has previously explained, the Lanham Act contains *no* statute of limitations. See *Black Diamond Sportswear, Inc.*, 2007 U.S. App. LEXIS 23515 at *3. Indeed, in arguing that laches should estop Defendant from being permitted to bring his 'contributory trademark infringement' claim, Modesir himself acknowledges this unambiguous proposition of law. It is not clear, therefore, why Mondesir reverses his position on this issue upon arguing for dismissal of Defendant's false designation of origin claim.[6] Regardless, the Lanham Act contains no statute of limitations and Mondesir's effort to have Defendant's false designation of origin claim, brought pursuant to 15 U.S.C. §1125(a), dismissed on this ground must necessarily fail.

### 4. Defendant's Contribution Claim On Plaintiffs' Right to Privacy Claim Is Not Barred By The Statute of Limitations

Defendant has also asserted a claim against Mondesir for 'contribution' and 'indemnification' with respect to any damages Defendant might face if found liable to Plaintiffs on their right to privacy claim brought pursuant to New York Civil Rights Law §§50, 51. Mondesir contends that this claim is time-barred by the statute of limitations, which he alleges to be one (1) year under NYCPLR 215(3).

In so arguing, Mondesir demonstrates an utter lack of understanding of the nature of the claim Defendant has asserted against Mondesir. As his complaint makes abundantly clear, Defendant asserts a claim against Mondesir for 'contribution' with respect to any liability Defendant might incur to Plaintiffs on *their* (Plaintiffs') right to privacy claim

---

[6] Furthermore, not only does Mondesir assert that the Lanham Act has a statute of limitations, but he also contends that this statute of limitations is three (3) years notwithstanding his acknowledgement that, in determining whether laches should bar Defendant's claim for 'contributory trademark infringement', the analogous six (6) year statute of limitations is applicable to determine which party bears the burden of proof on this issue.

pursuant to New York Civil Rights Law §§50, 51.  Defendant does *not* assert a claim against Mondesir for a violation of *his* (Defendant's) right to privacy under this statute.[7]

NYCPLR §1401 governs Defendant's claim for 'contribution'.

> *Under §1401 of the New York CPLR*, one who is subject to liability for causing a particular injury may seek contribution against another who may also be liable for causing the same injury. *See N.Y.Civ.Prac.L. §1401* (McKinney 1976).  Although the claim for contribution may be brought under *Rule 14* at the same time the original claim is being litigated, the statute of limitations applicable to the contribution claim does not begin to run until the third-party plaintiff is compelled to respond in damages for the injury as to which he is claiming contribution.

*Tri-Ex Enterprises, Inc. v. Morgan Guaranty Trust Company of New York*, 586 F. Supp. 930, 933 (S.D.N.Y. 1984); see also *Conklin v. St. Lawrence Valley Educational Television Council, Inc.*, 1995 U.S. Dist. LEXIS 3420 at *5 (March 8, 1995 N.D.N.Y.) ("Further, the statute of limitations for the underlying tort will provide no bar to a subsequent contribution action as such a claim for contribution accrues at the time of payment of the underlying claim."); *Ades v. Bolar Pharmaceutical Co., Inc.*, 1993 U.S. Dist. LEXIS 12901 at *52 (September 17, 1993 S.D.N.Y.)

The one (1) year statute of limitations applicable to *Plaintiffs'* right to privacy claim under New York Civil Rights Law §50 and §51, therefore, does not begin to run as to *Defendant's* claim against Mondsesir for 'contribution' unless and until *Plaintiffs* obtain a judgment against *Defendant* on that right to privacy claim.  To the extent Mondesir might suggest otherwise, that suggestion is unavailing.[8]

---

[7]      Indeed, Defendant maintains no such right to privacy claim against Mondesir, because Mondesir has not, to Defendant's knowledge, employed Defendant's image in a business or trade.

[8]      Indeed, this Court has suggested that this accrual rule which applies to claims for 'contribution', is *also* applicable to claims for 'contributory' copyright or trademark infringement, thereby rendering the date upon which such claims accrue under the applicable statute of limitations to be the date upon which the defendant becomes liable to the plaintiff, rather than the date when the defendant knew or should have known that the plaintiff would assert a claim against him. See *Capitol Records, Inc. v. City Hall Records, Inc.*, 2008 U.S. Dist.

B.     Defendant Has Made Out A Prima Facie Case On His Claims

1.    Defendant Has Made Out a Prima Facie Claim of Contributory Copyright Infringement

Mondesir contends that Defendant has failed to make out a prima facie claim for 'contributory copyright infringement', because, at the time Defendant first displayed Plaintiffs' allegedly copyright images of Yayo and Banks on the masthead of www.worldstarhiphop.com in 2006, Mondesir did not have 'actual knowledge' that Defendant was displaying the images; indeed, Mondesir alleges that he did not acquire such knowledge until Plaintiffs filed their lawsuit against Defendant in 2009.  This argument ignores the clear parameters of the law of contributory copyright infringement.

In *Arista Records LLC v. Doe 3*, the Second Circuit explained

> [A]lthough the Copyright Act does not expressly render anyone liable for infringement committed by another, it is well established, based on the common-law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor, that one who, with knowledge of the infringing activity, *induces*, causes *or materially contributes to the infringing conduct of another*, may be held liable as a 'contributory' infringer.  The knowledge standard is an objective one; contributory infringement liability is imposed on persons who know *or have reason to know* of the direct infringement.  Such liability exists if the defendant engages in personal conduct that encourages or assists the infringement.  The resolution of the issue depends upon a determination of the function that [the alleged infringer] plays in the total [reproduction] process.

*Arista Records LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010).  Many district courts in the Second Circuit have echoed and elaborated upon the 'objective knowledge' standard.  In *Arista Records LLC v. Usenet.com, Inc.*, this Court explained that

> The requisite knowledge for contributory infringement liability may be actual *or constructive*.  Turning a "blind eye" to infringement has also been found to be the equivalent of knowledge.  Thus, knowledge of specific infringements is not required to support a finding of contributory infringement.

---

LEXIS 55300 at *17-18 (July 18, 2008 S.D.N.Y.); *Too, Inc. v. Kohl's Department Stores, Inc.*, 213 F.R.D. 138, 141 (S.D.N.Y. 2003)

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp.2d 124, 153 (S.D.N.Y. 2009) (emphasis supplied); see also *Agence France Press v. Getty Images, Inc.*, 2013 U.S. Dist. LEXIS 5636 at *68 (January 14, 2013 S.D.N.Y.); *Powlus v. Chelsey Direct, LLC*, 2011 U.S. Dist. LEXIS 127637 at *12 (November 1, 2011 S.D.N.Y.); *Centrifugal Force, Inc. v. Softnet Communications, Inc.*, 2011 U.S. Dist. LEXIS 20536 at *11 (March 1, 2011 S.D.N.Y.) Indeed, "[a] party without actual knowledge of the particular instances of infringement may still be found liable as a contributory infringer: constructive knowledge is sufficient to establish liability." *EZ-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 732 (S.D.N.Y. 1996); see also *A & M Records, Inc. v. Napster, Inc.*, 114 F. Supp.2d 896, 918 (N.D.Ca. 2000) ("The law does not require actual knowledge of specific acts of infringement.") Moreover, "[u]nlike an inducement claim, a claim for contributory infringement does not require a showing that the defendant intended to foster infringement." *Arista Records LLC v. Lime Group LLC*, 784 F. Supp.2d 398, 431 (S.D.N.Y. 2011).

Assuming *arguendo* that Mondesir lacked 'actual knowledge' that Defendant had posted the allegedly copyrighted images of Yayo and Banks on the masthead of www.worldstarhiphop.com until *after* their posting and removal, the undisputed facts show that Mondesir clearly had reason to know, and therefore had 'constructive knowledge', that Defendant had employed these images on his website.

Defendant launched www.worldstarhiphop.com in 2005. (Und. Facts, ¶1) At around this time, Mondesir explicitly informed Defendant that he was permitted to use the images of Mondesir, Plaintiff Jackson and all other 'members' of G-Unit on the website. (Odenat Depo. [6/11/10], pp. 171-172) According to Plaintiff Jackson, 'G-Unit' includes Tony Yayo and Lloyd Banks. (Jackson Depo., p. 25)

14

As previously noted, Defendant first posted the *second* masthead, which contained the images of Yayo and Banks (in which Plaintiffs claim copyright ownership) as well as Plaintiff Jackson, Mondesir and Young Buck, on the website in around mid-2006, leaving it displayed there until April 2007. (Odenat Dec., ¶11) Defendant and Mondesir agree that Defendant continued to work to promote Mondesir, distribute mixtapes for him and book parties for him, through 2006. They disagree about the year in which this business arrangement ceased. Defendant has testified that it continued through 2008. (Odenat Depo. [5/3/11], pp. 30-31) (Odenat Depo. [6/11/10], pp. 171-172) Mondesir alleges that it ceased in 2006. (Mondesir Depo., pp. 96-101) Notwithstanding this disagreement, however, in 2006 at the time Defendant first displayed the masthead containing images of Yayo and Banks, Defendant and Mondesir were indisputably engaged in their ongoing business relationship, which had begun at least as early as 2002. (Und. Facts, ¶68)

During the 2006 Thanksgiving holiday weekend, Defendant sent Mondesir, via e-mail, a copy of his *second* masthead, containing the allegedly copyrighted images of Yayo and Banks, which he posted to www.worldstarhiphop.com at around that time. At Mondesir's home during Thanksgiving of this year, Defendant and Mondesir personally discussed this masthead. (Odenat Depo. [5/3/11], pp. 73-74)

Furthermore, the following year, in 2007, Defendant participated in a music tour with Plaintiff Jackson and Mondesir, known as the 'Anger Management' tour. (Mondesir Depo., pp. 106-107) While Defendant and Mondesir were on this tour together, the *second* masthead, containing the allegedly copyrighted images of Yayo and Banks, was posted on Defendant's website.

Due to the undisputed facts that, at the time the masthead containing images of Yayo and Banks was displayed on www.worldstarhiphop.com, Mondesir was involved in an

15

ongoing business relationship with Defendant, participated in a tour with Defendant and was explicitly shown the masthead, Mondesir certainly should have known that Defendant was employing the images of Yayo and Banks on www.worldstarhiphop.com.

In an effort to avoid the inevitable conclusion that he had 'constructive knowledge' that these images were displayed on www.worldstarhiphop.com with his encouragement, during his deposition, Mondesir testified that he was not aware that www.worldstarhiphop.com had *come into existence* at all until three (3) years after its formation; that is, until 2008. (Mondesir Depo. pp. 40, 111-112)  Objective evidence, however, clearly demonstrates that Mondesir is simply lying in this regard.

As Defendant has pointed out, Plaintiffs and Mondesir together created and distributed a mixtape, entitled 'Are You A Window Shopper?', which is clearly marked with the domain name of Defendant's website, www.worldstarhiphop.com. (Mondesir Depo., pp. 119-120) (Zarin Dec., Vol. 1, Exh. I)  Upon being confronted with this mixtape during his deposition, in an effort to avoid contradicting his earlier statement that he was not aware of the existence of www.worldstarhiphop.com until 2008, Mondesir testified that he and Plaintiff Jackson created and distributed this mixtape in that same year; that is, 2008. (Mondesir Depo., pp. 120-121)  This statement, however, is irrefutably false for two reasons.

First, Defendant displayed this mixtape on www.worldstarhiphop.com during the same period he displayed the second masthead, from 2006 through April 2007. (Odenat Dec., ¶¶11, 13, 16)  It therefore must necessarily have been created and distributed *before* 2008.  And second, the cover of this mixtape promotes a movie starring Plaintiff Jackson, 'Get Rich or Die Tryin', which it indicates would be 'In Theatres November 9'. (Zarin Dec.,

16

Vol. 1, Exh. I)  This film was released on November 9, 2005, *not* November 9, 2008.[9] (Second Supp. Zarin Dec., Exh. B-2)  Indeed, upon being asked about the mixtape 'Are You A Window Shopper' during *his* deposition, Defendant correctly testified that it was released in 2005. (Odenat Depo. [5/3/11], pp. 47-49)

In contradiction to his testimony, therefore, Mondesir has been aware of Defendant's website, www.worldstarhiphop.com, since its inception in 2005 when he and Plaintiff Jackson imprinted its domain name on their mixtape 'Are You A Window Shopper?'  He cannot, therefore, escape 'constructive knowledge' of Defendant's use of Yayo and Bank's images through his feigned ignorance of this website.

Mondesir also suggests, although does not explicitly argue, that Defendant has also failed to make out a prima facie case of contributory copyright infringement, because he cannot establish that Mondesir made a 'material contribution' to Defendant's display of the allegedly copyrighted images of Yayo and Banks.  Contrary to Mondesir's suggestion, Defedant can establish this factor in two ways.

First, as previously noted, Mondesir explicitly informed Defendant, during the 2006 Thanksgiving holiday weekend, that he was permitted to use the second masthead which contained the allegedly copyrighted images of Yayo and Banks. (Und. Facts, ¶75)

Second, as also previously noted, Mondesir imprinted the domain name of Defendant's website, www.worldstarhiphop.com, on the packaging of a number of the mixtapes which he and Plaintiff Jackson created together; in particular, he did so on the mixtape 'Are You A Window Shopper?'  By doing so, Mondesir advertised and promoted

---

[9]   During his deposition, Plaintiff Jackson testified that the album of the same name which gave rise to this movie, 'Get Rich or Die Tryin', was released in 2003. (Jackson Depo., pp. 17-18)

17

the product, Defendant's website www.worldstarhiphop.com, which displayed the allegedly infringing images.

The second masthead which displayed the allegedly copyrighted and infringing images also contained an image of Mondesir. (Mondesir Depo., pp. 48-49) (Odenat Dec., ¶11) (Second Supp. Zarin Dec., Exh. C-3) Consequently, Mondesir benefited both professionally and financially from Defendant's display of this masthead. (Odenat Depo. [5/3/11], pp. 33-37) (Mondesir Depo., pp. 98-99) As Defendant has stated, Mondesir "got exposure. And that's pretty much worth more than money to him, because that's going to eventually lead to more money." (Odenat Depo. [5/3/11], p. 37) Indeed, Mondesir has acknowledged that Defendant's efforts helped him to obtain more gigs as a disc jockey and that exposure was positive for his career. (Odenat Depo. [5/3/11], pp. 33-37) (Mondesir Depo., pp. 36-39, 98-99) He has also expressly stated that the reason he imprinted Defendant's domain name, www.worldstarhiphop.com, on the mixtape 'Are You A Window Shopper' was because he wanted Defendant to promote him. (Modesir Depo., pp. 123, 125, 127, 128)

Because he benefited professionally and financially from having his image displayed on Defendant's website, Mondesir had an incentive to encourage Defendant to display the second masthead on his website. Indeed, he did so by telling Defendant that he could employ the masthead and by advertising www.worldstarhiphop.com on his mixtapes. Because Mondesir personally stood to benefit from advertising and promoting Defendant's website, this promotional activity constituted a 'material contribution' to any copyright infringement of Tony Yayo and Lloyd Banks' images which Defendant may be found to have committed.

As this Court has explained, "[a]dvertising or otherwise promoting an infringing product or service may be sufficient to satisfy the material contribution prong," of a contributory copyright infringement claim. *Faulkner v. National Geographic Society*, 211 F. Supp.2d 450, 473-74 (S.D.N.Y. 2002); see also *Rogers v. Koons*, 751 F. Supp. 474, 481 (S.D.N.Y. 1990)) ("I accept that Sonnabend's conduct in advertising and displaying the infringing sculptures materially contributed to Koons' infringing conduct."); *Cariou v. Prince*, 784 F. Supp.2d 337, 354 (S.D.N.Y. 2011) ("Here, the Gagosian Defendants were well aware of (and capitalized on) Prince's reputation as an appropriation artist who rejects the constricts of copyright law, but they never inquired into the propriety of Prince's use of the Photos. The Court concludes that the Gagosian Defendants knew or should have known of the infringement at the time they reproduced, advertised, marketed, and otherwise promoted the Paintings. Accordingly, the Court finds that the Gagosian Defendants are liable as contributory infringers.); *Columbia Pictures Industries, Inc, v. Redd Horne, Inc.*, 749 F.2d 154, 161 (3d Cir. 1984) ("Redd Horne, Inc., conducted all of the advertising and promotional work for Maxwell's. It also provided financial, accounting, and administrative services for Maxwell's. All of these services, and the advertising service in particular, contributed and, indeed, were essential to the copyright infringement."); *Arista Records, Inc. v. Flea World, Inc.*, 2006 U.S. Dist. LEXIS 14988 at *51-52 (D.N.J. 2006) ("[Defendant's] also provide extensive advertising for the Market (including maintaining a web site to attract customers to the Market (by, for example, 'tipping' bus drivers who bring customers to the Market)."); *A & M Records, Inc.*, 114 F. Supp.2d at 919 ("The evidence indicates that Napster executives downloaded infringing material to their own computers using the service and promoted the website with screen shots listing infringing files.").

### 2.   Defendant Has Made Out a Prima Facie Claim of Contributory Trademark Infringement

As previously noted, in his claim for 'contributory trademark infringement', Defendant seeks damages from Mondesir in the event Defendant is found liable to Plaintiffs on their claims for trademark infringement, under 15 U.S.C. §1114(1), false adverting and unfair competition, under 15 U.S.C. §1125(a), and unfair competition, under New York common law.  Mondesir contends that Defendant has failed to make out a prima facie claim for 'contributory trademark infringement', because, even if Mondesir granted Defendant permission to employ Plaintiff Jackson's image and Plaintiffs' 'G-Unit' trademark on www.worldstarhiphop.com, Mondesir lacked the apparent authority from Plaintiffs to grant such permission to Defendant.

Defendant finds this argument beyond baffling.  Whether or not Mondesir had authority, apparent or otherwise, *from Plaintiffs* to grant permission to Defendant to use Plaintiffs' trademarks, is utterly irrelevant to the question whether Mondesir has committed 'contributory trademark infringement'.  Indeed, "[a] distributor who intentionally induces another to infringe a trademark, or continues to supply its product to one whom it knows or *has reason to know* is engaging in trademark infringement, is contributorially liable for any injury." *Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 64 (2d Cir. 1992) (emphasis supplied); see also *Steinway, Inc. v. Ashley*, 2002 U.S. Dist. LEXIS 1372 at *4 (January 29, 2002 S.D.N.Y.); *Sly Magazine, LLC v. Weider Publications LLC*, 241 F.R.D. 527, 530 (S.D.N.Y. 2007).  It is *Mondesir's conduct* towards Defendant, not *Plaintiffs' conduct* towards Mondesir, which is implicated by this inquiry.

Assuming *arguendo* that Plaintiffs did not authorize Mondesir to grant permission to Defendant to employ Plaintiff Jackson's image and Plaintiffs' 'G-Unit' trademark on his website, therefore, this conclusion would not in any way affect the inquiry whether *Mondesir*

20

induced Defendant to infringe upon Plaintiffs' trademarks. Indeed, if Mondesir acted alone, then Defendant's implied license and equitable estoppel defense against Plaintiffs will fail and Mondesir will be liable to Defendant for any damages Defendant incurs to Plaintiffs.

Mondesir suggests, but does not expressly argue, that Defendant has also failed to establish a prima facie case of 'contributory trademark infringement', because Mondesir did not have 'actual knowledge' that Defendant was employing Plaintiff Jackson's image and Plaintiffs' 'G-Unit' trademark on www.worldstarhiphop.com. To the extent the Court might view this suggestion as an actual argument, it is unavailing.

As noted, a claim for 'contributory trademark infringement', like a claim for 'contributory copyright infringement', can be established if a defendant had 'constructive knowledge'; that is, a *reason to know* that the plaintiff was engaging in conduct which is ultimately found to be infringing. See *Polymer Technology Corp.*, 975 F.2d at 64; *Steinway, Inc.*, 2002 U.S. Dist. LEXIS 1372 at *4; *Sly Magazine, LLC*, 241 F.R.D. at 530. Mondesir clearly had a 'reason to know' that Defendant was employing both Plaintiff Jackson's image and Plaintiffs' 'G-Unit' trademark.

Defendant displayed Plaintiffs' 'G-Unit' trademark on www.worldstarhiphop.com during the same time period that the masthead on www.worldstarhiphop.com contained the allegedly copyrighted images of Tony Yayo and Lloyd Banks; that is, around mid-2006 through April 2007. (Odenat Dec., ¶¶11, 12, 13, 16) Mondesir had reason to know that Defendant was displaying this trademark on www.worldstarhiphop.com, therefore, for all the same reasons he had constructive knowledge that Defendant had displayed the images of Yayo and Banks on the masthead.

In addition to these reasons, however, Mondesir also had reason to know Defendant was displaying Plaintiffs' 'G-Unit' trademark on his website, because: (1) Mondesir himself

21

supplied Defendant with the mixtapes, created by him and Plaintiff Jackson and imprinted with the 'G-Unit' trademark, which led Defendant to employ the 'G-Unit' trademark on his website (Odenat Depo. [5/3/11], pp. 32-34; Mondesir Depo., pp. 24-26); and (2) Mondesir imprinted the domain name of Defendant's website, www.worldstarhiphop.com, on many of these mixtapes, including for example 'Are You A Window Shopper?'. (Odenat Depo. [5/3/11], pp. 40-43, 45-46, 50-52; Mondesir Depo., pp. 127-128). Having undertaken these actions, Mondesir certainly had reason to know that Defendant would promote these mixtapes on his website under the 'G-Unit' trademark.

In his motion for summary judgment, Plaintiff Jackson contends, as the factual basis of his false designation of origin claim, under 15 U.S.C. §1125(a), and his unfair competition claim, under New York common law, that Defendant displayed Plaintiff Jackson's generalized 'persona' on www.worldstarhiphop.com. Because Plaintiff Jackson's claims are based upon Defendant's display on his website of Plaintiff Jackson's generalized 'persona', rather than the three (3) separate images of Plaintiff Jackson which Defendant in fact employed on the website, in order for Defendant to demonstrate that Mondesir had a 'reason to know' that Defendant was displaying Plaintiff Jackson's image on the website, Defendant necessarily is not required to show that Mondesir had constructive knowledge of *each* of the three (3) separate images of Defendant displayed on *each* of his three (3) different mastheads which appeared on the website between 2005 and March 2009. Instead, Defendant need only demonstrate that Mondesir had a reason to know that Defendant had displayed Plaintiff Jackson's generalized 'persona' on his website.

As previously noted, in addition to images of Tony Yayo and Lloyd Banks, the *second* masthead which Defendant displayed on www.worldstarhiphop.com, from around mid-2006 through April 2007, contained an image of Plaintiff Jackson. (Odenat Dec., ¶¶11, 12). For

22

all the reasons previously discussed which demonstrate that Mondesir had reason to know that Defendant displayed the allegedly copyrighted images of Yayo and Banks on this masthead, therefore, Mondesir also had a reason to know that Defendant had displayed the 'persona' of Plaintiff Jackson on the masthead.

Even if the previously articulated reasons did not provide Mondesir with 'constructive knowledge' that Defendant displayed Plaintiff Jackson's 'persona' on his website, however, Mondesir can establish contributory trademark infringement because he had 'actual knowledge' of this display. It is undisputed that Defendant's *third* masthead, which was posted atop www.worldstarhiphop.com from around January 2008 through March 2009, displayed an image of Plaintiff Jackson. (Odenat Dec., ¶¶17, 18) During his deposition, Mondesir unequivocally testified that, during the period this masthead was posted on www.worldstarhiphop.com, he visited the website and viewed this image of Plaintiff Jackson "maybe a hundred times." (Mondesir Depo., pp. 44, 53-57, 136-137) (Second Supp. Zarin Dec., Exh. D-4)

Having both 'constructive' and 'actual' knowledge that Defendant employed Plaintiff Jackson's 'persona' on www.worldstarhiphop.com, the former as early as 2005 and the latter as early as 2008, Mondesir is estopped from advancing the argument, which he in fact has not done, that Defendant has not made out a prima facie case of contributory trademark infringement because Mondesir lacked knowledge that Defendant was employing Plaintiff Jackson's 'persona' on his website.

Because Mondesir had 'constructive' knowledge that Defendant was using Plaintiffs' 'G-Unit' trademark on his website and *both* 'constructive' and 'actual' knowledge that Defendant was using Plaintiff Jackson's 'persona' on that website, Defendant has made out