USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Mar. 24, 2014

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------X

CURTIS JAMES JACKSON, III, p/k/a　　:
50 CENT, TOMORROW TODAY　　　　　　　:
ENTERTAINMENT, INC., and G-UNIT　　:
RECORDS, INC.,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiffs,　:
　　　　　　　　　　　　　　　　　　　　:　　　No. 09 Civ. 5583 (JFK)
　　-against-　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　　**OPINION & ORDER**
LEE Q. ODENAT, a/k/a "Q," d/b/a　　:
WWW.WORLDSTARHIPHOP.COM, WORLDSTAR :
HIP HOP, INC., WORLDSTAR, LLC,　　　:
WSHH337, LLC, JOHN DOE LLC(S)/　　　:
CORPORATION(S),　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendants.　:
　　　　　　　　　　　　　　　　　　　　:
--------------------------------- :
LEE Q. ODENAT, a/k/a "Q," d/b/a　　:
WWW.WORLDSTARHIPHOP.COM,　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Third-Party Plaintiff, :
　　　　　　　　　　　　　　　　　　　　:
　　-against-　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
YVES MONDESIR,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Third-Party Defendant. :
-----------------------------------X

APPEARANCES

　　　For Plaintiffs Curtis James Jackson, III, Tomorrow Today
　　　Entertainment, Inc., and G-Unit Records, Inc.:
　　　　　MORITT HOCK HAMROFF & HOROWITZ LLP
　　　　　By:  Michael Cardello, III

　　　　　GRAYROBINSON, P.A.
　　　　　By:  Karen L. Stetson

For Defendants Worldstar Hip Hop, Inc., Worldstar, LLC, WSHH337, LLC, and Defendant/Third-Party Plaintiff Lee Odenat:
    ZARIN & ASSOCIATES P.C.
    By:  Scott Zarin, Esq.

For Third-Party Defendant Yves Mondesir:
    FAZZIO LAW OFFICES
    By:  John P. Fazzio
        Katherine Braver

**JOHN F. KEENAN, United States District Judge:**

This action arises from Defendant Lee Odenat's allegedly unauthorized use of Plaintiff Curtis Jackson's likeness and intellectual property as well as the intellectual property of Plaintiffs Tomorrow Today Entertainment, Inc. ("Tomorrow Today Entertainment") and G-Unit Records, Inc. ("G-Unit Records") on Odenat's website, www.worldstarhiphop.com.

Odenat has brought third-party claims against Third-Party Defendant Yves Mondesir, alleging that Mondesir held himself out to be Jackson's agent and authorized Odenat's use of Jackson's likeness and Plaintiffs' intellectual property.  Odenat seeks contribution from Mondesir on whatever claims Odenat is found liable to Plaintiffs.  Odenat also alleges that Mondesir used the worldstarhip.com URL on a mixtape released by Mondesir without Odenat's authorization.

Plaintiffs filed a supplemental complaint against Defendants Worldstar Hip Hop, Inc.; Worldstar, LLC; and WSHH337, LLC, which are business entities formed by Odenat after

Plaintiffs filed their complaint against him.  Plaintiffs allege that Odenat made fraudulent transfers to those entities and that the entities are Odenat's alter egos.

Plaintiffs and Defendants now cross-move for summary judgment on all of the claims and affirmative defenses. Mondesir moves for summary judgment or, in the alternative, dismissal of the third-party complaint for failure to satisfy minimal pleading requirements.  He also moves for an award of attorney's fees.  For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part, Defendants' motion is denied in full, and Mondesir's motion is granted in part and denied in part.

## I. Background

Plaintiff Curtis Jackson is a hip-hop artist professionally known as "50 Cent."  His 2003 debut album, Get Rich or Die Tryin', and its follow up, The Massacre, have sold over 25 million copies combined.  He has also earned a measure of critical acclaim, having been nominated thirteen times for a Grammy Award. (Jackson Decl. ¶ 5.)  In addition to his solo career, Jackson is a member of the G-Unit musical group ("G-Unit"), along with members Tony Yayo and Lloyd Banks. (Id. ¶ 11; First Odenat Dep. 70-71.)

Jackson also works on the business end of the music industry.  He is the president of G-Unit Records and Tomorrow

Today Entertainment, both Plaintiffs in this action.  G-Unit Records produces and markets G-Unit's music and the music of its members, while Tomorrow Today Entertainment owns and operates the website www.thisis50.com, which covers Jackson, G-Unit, and hip-hop culture and entertainment in general. (Jackson Decl. ¶¶ 12, 22.)  Jackson owns registered trademarks for "G-Unit" and "This is 50." (Id. ¶¶ 13, 23, Exs. 1–2.)

In November 2003, G-Unit Records and Interscope Records (not a party to this action) registered a copyright for a sound recording titled Beg for Mercy, an album released by G-Unit. The registration form noted that the copyright was for "Sound Recording/Pictorial Matter." (Hilderley Decl. Ex. B.)  In October 2005, G-Unit Records and Interscope Records registered a copyright for a sound recording titled Thoughts of a Predicate Felon, a Tony Yayo solo album.  The registration form noted that the copyright was for "Most Sound Recording/Pictorial Matter." (Id. Ex. D.)

Third-Party Defendant Yves Mondesir is a disc jockey.  He goes by the name "DJ Whoo Kid," and has served as a DJ for G-Unit.  He also creates mixtapes, or compilations that include the music of various artists, and distributes them to retailers for promotional purposes. (Mondesir Dep. 26–33.)  Sometime in 2005, he released a mixtape titled Are You a Window Shopper? that included songs by Jackson.  The URL www.worldstarhiphop.com

appeared on the very bottom of the back of the mixtape packaging along with "the NEW #1 mixtape site." (Zarin Decl. Ex. I.)

In July 2005, Defendant Lee Odenat launched the website www.worldstarhiphop.com.  The website has featured hip-hop mixtapes, as well as videos of hip-hop musicians. (Odenat Decl. ¶ 5.)  From some time in 2005 until March 2009 (with a several month hiatus during 2007 when the website was inactive), Odenat's website used three different mastheads that included images of Jackson.  Although neither party is sure of the precise dates, they have agreed on a rough timeline.  The first masthead was displayed from 2005 until mid-2006 and included images of Jackson, Mondesir, and hip-hop artists Lil Wayne, Jim Jones, Jay-Z, Young Jeezy, and Chamillionaire. (Id. ¶ 9, Ex. B.) From mid-2006 through April 2007, the website displayed a different masthead with images of Jackson, Mondesir, G-Unit members Tony Yayo and Lloyd Banks, and hip-hop artist Young Buck.  This masthead also included a link labeled "G-Unit Radio."  The link led to a webpage displaying thumbnails of the cover art for several mixtapes in a series of mixtapes called "G-Unit Radio." (Id. ¶¶ 11-14, Exs. C-D.)  The phrase "Click Here To Hear A Sampler" is next to each thumbnail. (Id. Ex. D.) Until April 2007, Odenat charged worldstarhiphop.com viewers a fee.  From April 2007 until January 2008, the website was nonoperational. (First Odenat Dep. 147-48.)  After relaunch, the

site no longer charged a fee and, until March 2009, used a new masthead that featured images of Jackson, Jay-Z, and hip-hop artist Jim Jones. (<u>Id.</u> at 24–26; Odenat Decl. Ex. E.)

Plaintiffs commenced this action on June 18, 2009, alleging that Odenat violated their intellectual property rights, used Jackson's image without permission, and misled the public into believing Odenat's website was associated with or endorsed by Jackson and G-Unit Records.  The allegedly infringed intellectual property includes the "G-Unit" trademark, photographs of Jackson, a photograph of Tony Yayo from <u>Thoughts of a Predicate Felon</u>, and a photograph of Lloyd Banks from <u>Beg for Mercy</u>.  Plaintiffs seek money damages from and injunctive relief against Odenat under the Copyright Act, 17 U.S.C. §§ 501–505; sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a); and sections 50 and 51 of the New York Civil Rights Law.  Plaintiffs also seek money damages from Odenat for unfair competition under New York common law.

Odenat's answer, filed July 28, 2009, raises a number of affirmative defenses, including that Plaintiffs' claims are barred by the doctrines of fair use, license, equitable estoppel, and unclean hands.  After the filing of the answer, in September 2009, Odenat incorporated Defendant Worldstar Hip Hop, Inc. in Nevada. (Zarin Decl. Ex. A.)

In October 2010, Plaintiffs consented to the filing of Odenat's third-party complaint in which Mondesir was joined as a third-party defendant.  Odenat seeks indemnification from Mondesir under a theory of contributory copyright infringement, contributory trademark infringement, and contribution for violation of New York Civil Rights Law §§ 50, 51.  Odenat also seeks money damages for false designation of origin arising out of Mondesir's use of the worldstarhiphop.com URL on Are You a Window Shopper?.

After the filing of the third-party complaint, Odenat formed Defendants WSHH337, LLC and Worldstar, LLC as Delaware limited liability companies in February 2011. (Zarin Decl. Exs. B–C.)  In July 2011, Worldstar Hip Hop, Inc. registered the trademark "World Star Hip Hop." (Id. Ex. E.)  Worldstar Hip Hop, Inc. then assigned the trademark to Worldstar LLC in September 2011. (Id. Ex. F.)

Plaintiffs filed a supplemental complaint against Worldstar Hip Hop, Inc.; WSHH337, LLC; and Worldstar, LLC.  Plaintiffs allege that Odenat created these business entities and transferred assets, including www.worldstarhiphop.com, to them in "not-for-value transactions."  Plaintiffs seek to enjoin these entities and hold them liable for the claims against Odenat as his alter ego under a theory of fraudulent transfer.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir. 2013). A fact is "material" if it could affect the outcome of the case under the governing substantive law. Spinelli v. City of N.Y., 579 F.3d 160, 166 (2d Cir. 2009). A dispute over a material fact is "genuine" if there is evidence that could allow a "reasonable jury" to "return a verdict for the nonmoving party." McElwee v. Cnty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012) (internal quotation marks omitted). The moving party has the initial burden to show the absence of a genuinely disputed material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant's burden is met, then the nonmoving party must provide evidence to show that there is a genuine factual dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). The Court construes the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Plaintiffs' Copyright Infringement Claim

To succeed on a claim of copyright infringement, a plaintiff must show (1) "ownership of a valid copyright" and

(2) "copying of the protectable elements of the copyrighted work." Scholz Design, Inc. v. Sard Custom Homes, LLC, 691 F.3d 182, 186 (2d Cir. 2012).  A certificate of copyright registration is prima facie evidence of the validity of a copyright, although that presumption is rebuttable. MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 192 (2d Cir. 2004) (citing 17 U.S.C. § 410(c)).

### 1. Whether Plaintiffs Own a Valid Copyright

Plaintiffs present a Form SR certificate of registration for the album Beg for Mercy, as well as one for the album Thoughts of a Predicate Felon. (Hilderley Decl. Exs. B, D.) They also provide an unrebutted declaration attesting to the fact that the picture of Lloyd Banks was included in the "pictorial matter" registered with Beg for Mercy and that the picture of Tony Yayo was registered as part of the "pictorial matter" accompanying Thoughts of a Predicate Felon. (Hilderley Decl. ¶¶ 2-3.)  Defendants do not dispute that the pictures are part of the "pictorial matter"; rather, they argue that the pictures were incorrectly filed as part of the registration for sound recordings.  However, the filing of these photographs along with their respective sound recordings was in accordance with Copyright Circular 56, as well as 37 C.F.R. § 202.3(b)(2)(ii)(C).  Section 202.3(b)(2)(ii)(C) provides:

> In cases where a work contains elements of authorship
> in which copyright is claimed which fall into two or
> more classes, the application should be submitted in
> the class most appropriate to the type of authorship
> that predominates in the work as a whole.  However, in
> any case where registration is sought for a work
> consisting of or including a sound recording in which
> copyright is claimed, the application shall be
> submitted on Form SR.

37 C.F.R. § 202.3(b)(2)(ii)(C) (emphasis added).  Circular 56,
which covers registration for sound recordings, also
contemplates the filing of "artwork, photographs, and/or liner
notes" along with a sound recording. U.S. Copyright Office,
Circular 56:  Copyright Registration for Sound Recordings, at 3
(reviewed 2012).  Contra Defendants' argument, there does not
appear to be a requirement that each accompanying element
include a separate title.

Defendants also challenge the authorship of the photographs
by claiming that the photographers should have been listed as
the authors instead of Interscope Records and G-Unit Records.
The registrations clearly indicate that the contributions were
works made for hire, meaning that Interscope Records and G-Unit
Records are presumed to be the co-authors of the works.
17 U.S.C. § 201(b); Cmty. for Creative Non-violence v. Reid,
490 U.S. 730, 737 (1989).  Defendants attempt to rebut this
presumption with the work-for-hire agreement between Interscope
Records and Julian Alexander, the art director of Slang Inc.
According to Defendants, this document rebuts the presumption of

authorship because it does not include the names of the photographers.  However, the agreement clearly contemplates Alexander subcontracting photography to other individuals. (Supp. Zarin Decl. Ex. 2. ¶ 1.)  Thus, Defendants have not provided evidence to rebut the presumption of authorship in Interscope Records and G-Unit Records.  The Court finds that Plaintiffs own a valid copyright in the photograph of Tony Yayo and the photograph of Lloyd Banks.

Defendants assert that Plaintiffs did not produce the pictures during discovery.  However, according to the unrebutted Hilderly Declaration, the images were deposited as part of the pictorial material accompanying the registration for the albums and are therefore part of the public record maintained by the Copyright Office. See 17 U.S.C. § 705; 37 C.F.R. § 201.2(b)(1). As a public record, it was available to Defendants, and Plaintiffs were not required to produce it. S.E.C. v. Strauss, 94 Civ. 4150, 2009 WL 3459204, at *11–12 (S.D.N.Y. Oct. 28, 2009).

### 2. Whether Defendants Copied Protectable Elements

Defendants do not contest Plaintiffs' assertion that the images of Tony Yayo and Lloyd Banks used on the second masthead are actual copies of the photographs filed as pictorial matter along with the albums filed with the Copyright Office. (Def. Opp. Mem. 9; Def. Reply Mem. 3.)  Nor do Defendants claim to

have independently created the pictures used on the masthead.
Rather, Defendants argue that there are no substantial
similarities between the copyrighted photographs and the images
used.  However, Plaintiffs only need to show a substantial
similarity when there is no evidence of actual direct copying.
See Procter & Gamble Co. v. Colgate-Palmolive Co., 199 F.3d 74,
77 (2d Cir. 1999); 3 William F. Patry, Patry on Copyright § 9:21
(2012).  Furthermore, a rational jury comparing the pictures and
the images on the masthead could only reach one inescapable
conclusion:  the images on the masthead are substantially
similar because they are exact copies.  Aside from the obvious
cropping, the only discernible difference is that the picture of
Lloyd Banks is flipped so that he is facing right instead of
left.

     Insofar as Defendants challenge whether the photographs
were copyrightable, the images at issue exceed the rather low
bar for copyright protection of photographs. E. Am. Trio Prods.,
Inc. v. Tang Elec. Corp., 97 F. Supp. 2d 395, 417-18 (S.D.N.Y.
2000).  This is also more than de minimis copying.  Although the
images on the masthead appear to have been cropped, they are
recognizable likenesses of both Yayo and Banks, the subjects of
the copyrightable photographs. See Rogers v. Koons, 960 F.2d
301, 308 (2d Cir. 1992) ("[N]o copier may defend the act of

plagiarism by pointing out how much of the copy he has not pirated.").

Defendants' answer makes no claim that Jackson or Mondesir ever authorized Odenat to use the copyrighted photos.  Nor do they make such an assertion in their moving papers.[1]  As to copyright infringement, Plaintiffs are entitled to summary judgment.

### C. Plaintiffs' Right of Publicity Claim Under New York Civil Rights Law Section 50 and 51

In New York, the right to privacy and corresponding right of publicity are both set forth in sections 50 and 51 of the New York Civil Rights Law. Myskina v. Conde Nast Publ'ns, Inc., 386 F. Supp. 2d 409, 414 (S.D.N.Y. 2005).  A successful right of publicity claim must show "(1) use of plaintiff's name, portrait, picture or voice (2) for advertising purposes or for the purposes of trade (3) without consent and (4) within the state of New York." Hoepker v. Kruger, 200 F. Supp. 2d 340, 348 (S.D.N.Y. 2002) (internal quotation marks omitted).  Defendants only contest the first prong.  Although they admit that the three images are in fact of Jackson, they argue that the images are not recognizable likenesses of him.  Defendants also assert that Plaintiffs' claim is barred by the statute of limitations.

---

[1] Notwithstanding the absence of such an assertion here, Odenat's third-party complaint alleges that Mondesir authorized Odenat to use the images of Lloyd Banks and Tony Yayo.

### 1. Whether the Photographs Are Recognizable Likenesses of Jackson

Whether a photo is a recognizable likeness of the plaintiff is ordinarily a jury question. Allen v. Nat'l Video, Inc., 610 F. Supp. 612, 623 (S.D.N.Y. 1985).  Summary judgment is appropriate, however, where the person in the photograph is identifiable by someone familiar with him, even if the pictures are of poor visual quality. See Negri v. Schering Corp., 333 F. Supp. 101, 103–05 (S.D.N.Y. 1971) (granting summary judgment after finding actress's features were "quite clear and characteristic" in the advertisement); Shamsky v. Garan, Inc., 632 N.Y.S.2d 930, 933–34, 937 (Sup. 1995).

The three images at issue are shots of Jackson's face.  The first two mastheads use images of Jackson directly facing the camera, while the third masthead includes an image of Jackson in profile.  The highest quality image of the first masthead is part of Exhibit 1 to the Sinnreich Declaration, bearing the stamp 00007. (Sinnreich Decl. Ex. 1.)  The image shows a shot of the front of Jackson above the waist, with one arm and a portion of his torso obscured.  He is wearing a shirt, a chain, and a baseball cap.  The cap casts a dark shadow over most of his forehead and eyes.  Despite the shadow, the viewer can make out the shape of Jackson's face.  His nose, mouth, cheeks, and the corner of one eye are observable.

Odenat's Declaration includes the best copy of the second masthead. (Odenat Decl. Ex. D.)  The image of Jackson is small. Although somewhat pixilated, the image clearly captures the shape of Jackson's face.  All of his features are visible.

The Odenat Declaration also presents the best quality copy of the third masthead. (Id. Ex. E.)  The image shows the shape of Jackson's profile, with the back of his head in complete shadow save for his ear.  His face, however, is illuminated, and his features are easily discernible.

As each picture depicts significant portions of Jackson's face, the Court concludes that they are recognizable likenesses of Jackson because someone familiar with Jackson would be able to identify him in each of the mastheads. See Cohen v. Herbal Concepts, Inc., 63 N.Y.2d 379, 385 (1984).  This finding is supported by the fact that during depositions several people, most notably Odenat, were able to identify Jackson on each of the mastheads. (First Odenat Dep. 71, 201; Second Odenat Dep. 53.)  The cases cited by Defendants are inapposite because none of them concern photographs of a plaintiff's face.  There is thus no genuine dispute regarding Defendants' use of a photograph of Jackson, and Plaintiffs have therefore demonstrated their entitlement to summary judgment on this issue.

## 2. Statute of Limitations

Defendants also assert a statute of limitations defense against Plaintiffs' right of publicity claim.  As explained in this Court's previous Order, "the proper method for raising a statute of limitations defense is to interpose it in the Answer." (ECF No. 146.)  Defendants did not assert a statute of limitations defense in their answer as to the Plaintiffs' New York Civil Rights Law claim, and now seek leave to amend. (Def. Reply Mem. 4 n.7.)  Because we are well past the December 15, 2009 deadline to amend pleadings, Defendants must show good cause. See Fed. R. Civ. P. 16(b)(4).

The touchstone of good cause is the moving party's diligence. See Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  Defendants' only justification for not pleading the statute of limitations defense is that they meant to interpose a general statute of limitations defense but erroneously tied the defense to the copyright claim.  They had over four months after they interposed the answer to catch their mistake before the Court's scheduling deadline.  After the deadline, they had over three years to bring the mistake to the Court's attention.  That Defendants' June 7, 2011 letter suggested the defense does not save the defense because that was nearly a year and a half after the missed deadline.  This does not demonstrate diligence. See Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003)

(holding that district court did not abuse its discretion in
denying leave to amend complaint after delay of more than a
year); <u>Scott v. City of N.Y. Dep't of Corr.</u>, No. 04 Civ. 9638,
2007 WL 4178405, at *4 (S.D.N.Y. Nov. 26, 2007) (finding that
counsel's mistake or inadvertence did not support good cause).
Leave to amend is therefore denied, and the statute of
limitations will not bar entry of judgment in favor of
Plaintiffs on this issue.

### D. Plaintiffs' False Endorsement Claim

Section 43(a)(1) of the Lanham Act prohibits the use of:

any word, term, name, symbol . . . or any false
designation of origin, false or misleading description
of fact, or false or misleading representation of
fact, which—
    is likely to cause confusion, or to cause
    mistake, or to deceive as to the affiliation,
    connection, or association of such person with
    another person, or as to the origin, sponsorship,
    or approval of his or her goods, services, or
    commercial activities by another person . . . .

15 U.S.C. § 1125(a)(1).  A trademark is not required for a
successful section 43(a) claim, which "mak[es] certain types of
unfair competition federal statutory torts, whether or not they
involve infringement of a registered trademark." <u>Famous Horse
Inc. v. 5th Ave. Photo Inc.</u>, 624 F.3d 106, 110 (2d Cir. 2010)
(internal quotation marks omitted).  Plaintiffs assert that the
use of Jackson's persona and the "G-Unit" mark on the mastheads

constitutes false endorsement and unfair competition under the Lanham Act.

Defendants do not challenge Plaintiffs' characterization of the "G-Unit" mark claim as one for false endorsement. While the term "false endorsement" often describes claims concerning celebrity personas, the Second Circuit has recognized that a false endorsement claim can be premised on "confusion between [plaintiff's] product and the alleged infringer's product." Famous Horse, 624 F.3d at 108 (emphasis added) (internal quotation marks omitted). A claim for false endorsement under section 43(a)(1)(A) must allege "that the defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to origin, sponsorship, or approval of the goods or services." Burck v. Mars, Inc., 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008). Plaintiffs allege that Defendants used the images of Jackson and the "G-Unit" mark on the worldstarhiphop.com mastheads in a way that is likely to confuse advertisers and website viewers as to whether Jackson sponsored or approved the website. Defendants raise two threshold issues concerning Plaintiffs' persona claim, and further challenge the likelihood of confusion prong.

The Court first addresses Defendants' two arguments regarding Plaintiffs' persona claim. First, Defendants claim

that Plaintiffs never previously based their claims on Jackson's
persona.   This argument is plainly without merit.   Plaintiffs'
complaint premised the section 43 claim on the use of both the
G-Unit trademark and of the "image and likeness" of Jackson.
(Compl. ¶¶ 44-46.)   Persona is synonymous with image. See
Merriam-Webster's Collegiate Dictionary 924 (11th ed. 2011).
Courts have referred to a celebrity's trademark-like interest in
his or her image, likeness, persona, and identity. See, e.g.,
Bruce Lee Enters., LLC v. A.V.E.L.A., Inc., No. 10 Civ. 2333,
2011 WL 1327137, at *4 (S.D.N.Y. Mar. 31, 2011) (collecting
cases that refer to a celebrity's interest); see also 1 J.
Thomas McCarthy, The Rights of Publicity and Privacy § 4:46
(2d ed. 2013).

     Second, Defendants assert that the Second Circuit has never
recognized a trademark right in a persona.   This argument is
equally futile.   Several courts have recognized that celebrities
have a trademark-like interest in their individual personas. See
Bondar v. LASplash Cosmetics, No. 12 Civ. 1417, 2012 WL 6150859,
at *5 (S.D.N.Y. Dec. 11, 2012); Bruce Lee Enters., 2011 WL
1327137, at *4; see also ETW Corp. v. Jireh Publ'g, Inc., 332
F.3d 915, 925 (6th Cir.2003).   Defendants also misconstrue the
caselaw on this point.   Both Pirone v. MacMillan, Inc., 894 F.2d
579 (2d Cir. 1990), and ETW Corp. reject a celebrity's persona
as a trademark for purposes of section 32(a), not section 43(a).

Moreover, both cases, at least implicitly, recognize that photographs of celebrities can form the basis of a false endorsement claim. Pirone, 894 F.2d at 584 (recognizing a picture of celebrity as symbol under section 43(a) but holding that there was no sponsorship or likelihood of confusion); ETW Corp., 332 F.3d at 925 ("Courts have recognized false endorsement claims under § 43(a) of the Lanham Act where a celebrity's image or persona is used in association with a product so as to imply that the celebrity endorses the product.").

The parties also dispute the likelihood of consumer confusion. Likelihood of confusion is a factual question, but summary judgment may be appropriate where the evidence leads to only one conclusion. See Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 478 (2d Cir. 1996). For a section 43(a) claim, "[t]he public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." Famous Horse, 624 F.3d at 109 (internal quotation marks omitted). In assessing the likelihood of confusion, courts in the Second Circuit apply the eight-factor test laid out in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961). See Kelly-Brown v. Winfrey, 717 F.3d 295, 307 (2d Cir. 2013). These factors are:

> (1) strength of the trademark; (2) similarity of
> the marks; (3) proximity of the products and their
> competitiveness with one another; (4) evidence
> that the senior user may "bridge the gap" by
> developing a product for sale in the market of the
> alleged infringer's product; (5) evidence of
> actual consumer confusion; (6) evidence that the
> imitative mark was adopted in bad faith;
> (7) respective quality of the products; and
> (8) sophistication of consumers in the relevant
> market.

Id. (internal quotation marks omitted). "No single factor is dispositive, nor is a court limited to consideration of only these factors." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 118 (2d Cir. 2006) (internal quotation marks omitted). Moreover, application of the factors is not meant to be rote; rather, a court should keep in mind that the ultimate question is whether the use in its totality would likely confuse consumers. Kelly-Brown, 717 F.3d at 307.

Courts adjust the factors when dealing with false endorsement claims. In such cases, the quality of the products and "bridging the gap" are often not considered. See Standard & Poor's Corp. v. Commodity Exch., Inc., 683 F.2d 704, 708 (2d Cir. 1982); Oliveira v. Frito-Lay, Inc., No. 96 Civ. 9289, 1997 WL 324042, at *3 (S.D.N.Y. June 13, 1997); Nat'l Video, 610 F. Supp. at 627. In a celebrity endorsement case, the "mark" is the plaintiff's persona and the "strength of the mark" refers to the level of recognition that the plaintiff has among the consumers to whom the advertisements are directed. Bruce Lee

Enters., 2011 WL 1327137, at *20; Nat'l Video, 610 F. Supp. at 627.

   Before delving into the analysis, a more detailed description of each masthead is in order.  Defendants' first masthead, which they displayed from 2005 until mid-2006, takes up roughly a third of a printed page.  The top fifth of the masthead is a banner.  The left half of that banner is a rectangular link to sign up for a monthly membership.  On the right are two smaller rectangular links:  one contains the words "Largest Official Rap Music/DVDS Network IPOD Compatible" and the other is a link to the "WSHH MIXTAPE VAULT."  Beneath those banners is a city background.  In the foreground are the images of seven hip-hop artists who take up between a third and a half of the space below the banner.  The musicians are arranged in a V shape, with the person in the center, identified as Mondesir, appearing closest and largest.  To his left and right, three artists on each side fan out with each subsequent artist appearing further back and smaller.  An image of Jackson appears to Mondesir's immediate right.  He is partially obscured by Mondesir.  The "World Star Hip Hop" logo appears above the artists on Mondesir's left but below the banner at the top of the masthead.  The logo takes up approximately an eighth of the entire masthead.  The logo partially obscures the top of the

head of the artist to Mondesir's immediate left and is partially obscured by Mondesir's head.

The second masthead, displayed from mid-2006 until April 2007, takes up roughly a quarter of a printed page. Slightly more than the top third appears to be black with six small blue triangles spread across it. At the bottom of that top third are six rectangular links labeled "Home," "Members," "G-Unit Radio," "Mixtapes," "Join Now," and "FAQS." The lower two thirds of the masthead has what appears to be a city skyline. The lower left hand corner of the skyline has a "WSHH" logo that takes up roughly a sixth of the masthead. Immediately above the logo are the images of five hip-hop artists who together take up a little less than a sixth of the page. Jackson appears in the upper left hand corner of this group of artists. Mondesir is toward the front. Banks and Yayo, two other members of G-Unit, are also included.

The third masthead, used from January 2008 until March 2009, includes a "World Star Hip Hop" logo that takes up approximately a ninth of the masthead. It occupies the bottom, center ninth. Two figures loom over each side of the logo. To the left is an image of Jackson in profile, facing the logo, that is slightly less than a third of the masthead. To his left (toward the back of his head) are two much smaller images of hip-hop artists. Mirroring them are three images of what appear

to be, and what the parties have indentified as, robot heads. Like the images of the hip-hop artists, there are two smaller robots and one much larger one.

The Court's review of each masthead does not lead to one inevitable conclusion regarding the likelihood of consumer confusion.  A rational jury evaluating the mastheads could conclude that Jackson or G-Unit sponsored or approved of worldstarhiphop.com, or the jury could conclude that no such confusion was likely.

It is no doubt generally true that a celebrity's "mere presence [in an advertisement] is inescapably to be interpreted as an endorsement." Nat'l Video, 610 F. Supp. at 627 n.8. However, the use of a celebrity photograph does not always confuse as to sponsorship.  In Pirone, defendant used an actual picture of Babe Ruth in a baseball calendar.  The Court nevertheless held that, as a matter of law, there was no likelihood of confusion as to sponsorship.  This was partly because there were "numerous, prominent references" to the publisher and the calendar used photographs of several different ballplayers, who were the subject matter of the calendar.

The Court notes that there is some similarity between the use of the photographs of baseball players at issue in Pirone and the photographs of the hip-hop artists used on the masthead here.  That there are several hip-hop musicians on each masthead

could suggest that the masthead is merely identifying the
subject matter of the website—hip hop—and makes confusion as to
sponsorship less likely.  Although, for the reasons discussed
below, Defendants' use of the images does not support a fair use
defense, the images of Jackson or "G-Unit Radio" used with other
hip-hop artists could imply something other than sponsorship or
affiliation.  Of course, unlike the baseball pictures in Pirone,
the pictures of the artists themselves are not the subject
matter of the website.  Because the Court finds that a rational
jury could conclude that consumers would not be confused as to
Jackson's sponsorship of worldstarhiphop.com, Plaintiffs are not
entitled to summary judgment on this issue.

    Having determined that the overall impression of each
masthead does not inevitably lead to one conclusion over the
other, the Court must nevertheless evaluate the evidence as to
each of the Polaroid factors to determine whether Plaintiffs
have proffered sufficient evidence to survive Defendants' motion
for summary judgment.  As detailed below, the Court finds that
Plaintiffs have presented sufficient evidence for a jury to
conclude that each of the Polaroid factors weighs in Plaintiffs'
favor.

### 1. Strength of Mark and Level of Recognition

Although Defendants now challenge the strength of the G-Unit trademark and Jackson's persona, Defendant Odenat has previously acknowledged that both the trademark and Jackson are "well known." Specifically, Odenat acknowledged that the G-Unit clothing brand is well known and that Jackson has been well known, particularly among hip-hop fans, since his first album was released in 2003. (First Odenat Dep. 87, 151.)

Plaintiffs have also, by way of a declaration, supported the strength of Jackson's persona and the G-Unit trademark.[2] Jackson has sold over 25 million copies of his albums, with his debut album attaining international success. This success predates the launch of Defendants' website in 2005, as Jackson's debut album was released in 2003, selling nearly 900,000 units in the first four days. He has also been nominated thirteen times for a Grammy Award. As for the "G-Unit" mark, it has

---

[2] Defendants urge this Court to use all six factors outlined in Thompson Med. Co. v. Pfizer, Inc., 753 F.2d 208, 217 (2d Cir. 1985). However, the Second Circuit used those factors in the context of showing "secondary meaning" and cautioned that "no single factor is determinative and every element need not be proved." Id. (citations and internal quotation marks omitted). Defendants do not challenge the "inherent distinctiveness" of Jackson's persona or the "G-Unit" trademark. (Def. Opp. Mem. 35.) Thus, secondary meaning is not required. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992) ("The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning."); see also 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 15:1.50 (4th ed. 2013).

sales exceeding $150 million. (Jackson Decl. ¶¶ 5, 14.)  The
Court finds that Plaintiffs have adduced sufficient evidence for
a jury to conclude that this factor weighs in their favor.

### 2. Similarity

Defendants do not dispute that they used actual pictures of
Jackson.  As to "G-Unit" mark, Defendants try to distinguish
their use of "G-Unit Radio" on Odenat's website.  This
distinction is unavailing.  "G-Unit" is clearly the dominant
part of "G-Unit Radio," as "G-Unit" is distinct and "Radio" is
generic. See Morningside Grp. Ltd. v. Morningside Capital Grp.,
LLC, 182 F.3d 133, 140 (2d Cir. 1999); Golden Door, Inc. v.
Odisho, 646 F.2d 347, 350-51 (9th Cir. 1980).  The Court notes,
however, that it appears that the "G-Unit" mark is sometimes
written in a stylized cursive font. (Zarin Decl. Ex. P.)  The
masthead does not use this distinctive font, which could weigh
in Defendants' favor.  Nevertheless, the Court finds that
Plaintiffs have adduced sufficient evidence for a jury to
conclude that this factor weighs in their favor.

### 3. Proximity

In examining proximity, courts look to the overlap or
"intersection" of audiences or consumers. Tin Pan Apple, Inc. v.
Miller Brewing Co., 737 F. Supp. 826, 835 (S.D.N.Y. 1990); Allen
v. Men's World Outlet, Inc., 679 F. Supp. 360, 368 (S.D.N.Y.
1988).  Jackson is a hip-hop artist.  The G-Unit trademarks have

been used by Plaintiffs as the name of a hip-hop group, a hip-hop record label, and an "urban clothing line." (Jackson Decl. ¶¶ 11-13.)  Defendants' website, worldstarhiphop.com, targets hip-hop fans by posting hip-hop mixtapes and video clips featuring hip-hop artists. (Odenat Decl. 151-52; Def. Am. Statement of Undisputed Facts ¶ 1).  There is sufficient evidence for a jury to conclude that Jackson and Defendants both cater to hip-hop fans.

Defendants assert that there is no proximity between worldstarhiphop.com and Jackson's interests in his persona and the "G-Unit" trademark because Jackson and G-Unit are not well known for the creation of a website.  Defendants' argument is wrong for two reasons.  First, it makes no difference whether G-Unit and Jackson are better known for hip-hop music and clothing than for operating a hip-hop website.  Courts in this circuit have long recognized that the parties need not be in actual competition with each other when the claim is based on false affiliation or sponsorship. See Oliveira, 1997 WL 324042, at *4; Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 467 F. Supp. 366, 374 (S.D.N.Y.), aff'd, 604 F.2d 200 (2d Cir. 1979).  Second, Jackson has operated a website, www.thisis50.com, since 2007. (Jackson Decl. ¶ 22.)  Therefore, Jackson may have been in actual competition with worldstarhiphop.com since then.  For all of these reasons, the

Court finds that Plaintiffs have put forth sufficient evidence for a jury to conclude that this factor weighs in their favor.

### 4. Actual Consumer Confusion

Plaintiffs' evidence to support actual confusion consists of an expert's report, an email obtained from Defendants during discovery, and anecdotes from Jackson and his employees.[3]  The Court first notes that it does not find Plaintiffs' expert's report conclusive of actual consumer confusion.  The report mentions that Google's AdWords "Keyword Tool" shows a disproportionate association between worldstarhiphop.com and search terms related to Jackson. (Sinnreich Decl. ¶¶ 21-23.) However, it is not clear to the Court how, if at all, that association is attributable to the mastheads because it is possible that the association derives from the website's hosting of videos of Jackson.  The Court also notes that the association could be attributable in part to public interest surrounding Jackson's alleged hacking of worldstarhip.com, which, whether it happened or not, received some media attention four months before Plaintiffs' expert used the "Keyword Tool." (Zarin Decl. Exs. K-L.)

---

[3] Plaintiffs also submitted four emails received by the advertising agency for thisis50.com. (Norton Decl. Ex.)  However, Defendants allege, and Plaintiffs do not dispute, that these emails were not produced during discovery.  The Court therefore did not consider the emails in its balancing of this factor.

The email and anecdotes are evidence that a jury could consider as to this factor.  The Court notes that "actual confusion need not be shown to prevail under the Lanham Act." See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986).  Plaintiffs have therefore provided sufficient evidence for a jury to conclude that this factor weighs in their favor.

### 5. Evidence of Bad Faith

Plaintiffs argue that bad faith can be inferred from several portions of Odenat's testimony.  First, Odenat admitted that he had prior knowledge of Jackson's and G-Unit's celebrity. (First Odenat Dep. 85, 87, 150–51.)  Second, Odenat requested that his designer include the "hottest rappers" on the third masthead. (Id. at 25, 47.)  Third, Odenat used the image and mark without first asking Jackson.  Defendants assert that Odenat acted in good faith because he thought he had received permission from Mondesir.

Odenat's knowledge of Jackson's persona and the G-Unit mark, coupled with his request for the "hottest rappers" could allow a reasonable jury to conclude that "defendant in adopting its mark intended to capitalize on plaintiff's good will." See EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 66 (2d Cir. 2000).  Plaintiffs have therefore

provided sufficient evidence for a jury to conclude that this factor weighs in their favor.

### 6. Sophistication of Consumers in the Relevant Market

The parties dispute the identity of the relevant consumers. Plaintiffs argue that it should be advertisers as well as viewers of the website. Defendants disagree regarding website viewers, but agree that advertisers are relevant. Defendants urge the Court to also consider musicians wishing to post content on worldstarhiphop.com as consumers.

Advertisers and musicians that seek to post content on the website are relevant consumers. Website viewers are also clearly relevant consumers for the first two mastheads. Worldstarhiphop.com used both mastheads while it charged viewers a fee. (First Odenat Dep. 146–47.) Additionally, the Court finds that website viewers are relevant customers even when not charged because the website traffic from those viewers makes a website more attractive to advertisers. Thus, the sophistication of the website viewers is also an appropriate consideration for the third masthead.

As set forth above, a rational jury could conclude that there is or there is not a likelihood of confusion. Plaintiffs have provided sufficient evidence as to each <u>Polaroid</u> factor to demonstrate a genuine dispute as to the likelihood of confusion.

For these reasons, neither party is entitled to summary judgment on this issue.

### E. Plaintiffs' Trademark Infringement Claim

Section 32(a)(1) of the Lanham Act prohibits the

use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(a)(1).  There is a two-pronged test for infringement under section 32(a):  (1) whether the mark is "entitled to protection" and (2) whether there is a likelihood of consumer confusion as to origin or sponsorship of defendant's goods. Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003).  Defendants do not contest the validity of the "G-Unit" trademark.[4]  Therefore, the only consideration is whether there is a likelihood of confusion.

As previously discussed, the Court has found sufficient evidence for a jury to consider likelihood of confusion but concludes that a jury is in the best position to decide the ultimate question of whether consumers are likely to be confused as to sponsorship.  However, Defendants contend that they made a nominative fair use of the "G-Unit" mark.

---

[4] Insofar as Defendants' argument concerning the strength of the "G-Unit" mark can be construed as challenging its entitlement to protection, that argument is rejected for the reasons discussed supra at footnote 2.

The doctrine of nominative fair use originated in the Ninth Circuit. See New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302, 307–09 (9th Cir. 1992).  A nominative fair use occurs when plaintiff's mark is used to describe plaintiff's own product. Cairns v. Franklin Mint Co., 292 F.3d 1139, 1151 (9th Cir 2002).  In the Ninth Circuit, it provides an alternative way to analyze likelihood of confusion. See id.  The Third Circuit allows it to be used as an affirmative defense. Century 21 Real Estate Corp. v. Lendingtree, Inc., 425 F.3d 211, 228–31 (3d Cir. 2005).  The Second Circuit has neither adopted nor rejected the doctrine, but has recognized that a "defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant." Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 102–03 (2d Cir. 2010).

As an initial matter, although Defendants label nominative fair use an affirmative defense, they ask the Court to utilize it as a replacement for the likelihood of confusion analysis, in the manner of the Ninth Circuit. (Def. Opp. Mem. 48.)  Thus, the Court need not address whether it operates as an affirmative defense.

Under either the Ninth Circuit's or the Second Circuit's standard, Defendants are not entitled to summary judgment.

While the use of the "G-Unit Radio" button seems necessary to identify the mixtape series of the same name, its placement on the masthead along with members of G-Unit could imply false affiliation or endorsement by Jackson, the owner of the "G-Unit" mark.  This clearly implicates the likelihood of confusion analysis and requires an evaluation of the masthead in context. For the reasons described in this Opinion, that is a matter best left for the jury.  Because the likelihood of confusion is a genuine dispute of a material fact, neither party is entitled to summary judgment on this issue.

### F. Plaintiffs' Common Law Unfair Competition Claim

To succeed on their common law unfair competition claim, Plaintiffs must (1) establish either actual confusion or a likelihood of confusion; and (2) must make "some showing of bad faith" on Defendants' part. Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995).  As discussed above, Plaintiffs have adduced sufficient evidence to raise material questions of fact concerning Defendants' bad faith as well as for both actual confusion and a likelihood of confusion concerning Defendants' use of Plaintiffs' intellectual property. However, as neither prong is established as a matter of law, neither party is entitled to summary judgment on this issue.

## G. Defendants' Affirmative Defenses

Plaintiffs argue that none of Defendants' affirmative defenses warrants summary judgment for Defendants, nor do the defenses preclude summary judgment in Plaintiffs' favor. Defendants contend that the defenses of fair use, nominative fair use, implied license, equitable estoppel, and unclean hands bar entry of summary judgment in favor of Plaintiffs, and warrants summary judgment for Defendants on the trademark and right of publicity claims.

As a preliminary matter, although Plaintiffs challenged Defendants' first, second, third, fourth, fifth, sixth, seventh, twelfth, and thirteenth affirmative defenses in their moving papers, Defendants' response provides no evidence nor advances any arguments to support these defenses. The Court thus deems them abandoned. Summit Health, Inc. v. APS Healthcare Bethesda, Inc., No. 11 Civ. 9718, 2014 WL 288050, at *12 (S.D.N.Y. Jan. 24, 2014) ("In light of Defendant's failure to respond to Plaintiff's motion with respect to duress, the Court deems that affirmative defense abandoned.")  As discussed above, nominative fair use may inform the likelihood of confusion analysis, but it is no longer considered an affirmative defense.  The Court now turns to the four remaining disputed affirmative defenses.

## 1. Fair Use

Defendants assert fair use as an affirmative defense only as to their display of Jackson's persona.  A successful fair use defense must establish that the use of the mark was "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." <u>Kelly-Brown</u>, 717 F.3d at 308.[5]  Defendants argue that they displayed Jackson's image to indicate that visitors to the website could find video clips of Jackson there.  To support this defense, Defendants include an exhibit that includes printouts of photographic thumbnails that Defendants assert represent video clips featuring Jackson that appeared on worldstarhiphop.com.

The Court need not address this evidence because the fair use defense fails as a matter of law on the second prong.  A descriptive term is one that has a primary meaning that can describe characteristics of a product. <u>See</u> 2 McCarthy on Trademarks and Unfair Competition § 11:45 (4th ed. 2013).  A trademark may protect a term's secondary meaning but does not prevent others from using the term in its primary, descriptive sense. <u>Id.</u>  While the Second Circuit has recognized that an

---

[5] Defendants attempt to bolster this defense with reference to 15 U.S.C. § 1115(b)(4).  However, § 1115 relates only to registered trademarks, and, as Defendants have gone to great pains to point out, a persona is not an actual trademark.  As § 1115 incorporates the common law "fair use" defense, the analysis as to unregistered marks in a Section 43(a) context is the same as for registered marks. <u>See</u> 2 McCarthy on Trademarks and Unfair Competition § 11:49.

image or shape may be descriptive, it has done so in the context of images or shapes that evoke characteristics of the product. See Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 270 (2d Cir. 1995) (holding that a pine-tree shape describes the pine scent of the product as well as the Christmas season during which the product was sold).

Defendants provide no authority to support the fair use of a celebrity's image or likeness. This is not surprising, as a celebrity's image, standing alone, only evokes that celebrity's persona. Jackson's image does not, by itself, describe anything about Defendants' website. Defendants ask the Court to infer that the image of Jackson conveys that worldstarhiphop.com features videos of Jackson. But the image alone cannot and does not convey the presence of videos. Moreover, the mastheads give no indication that the website contains videos of the hip-hop artists whose images are used. The second and third mastheads do not even include the word "video."

Thus, the images, even viewed in the context of each masthead, do not convey to a viewer that the website contains videos of Jackson. The images are therefore not used in a descriptive sense and the fair use defense fails as a matter of law. This affirmative defense will not bar entry of judgment in favor of Plaintiffs and is therefore stricken.

## 2. Implied License

Defendants' theory of implied license is that Mondesir's course of conduct with Odenat gave rise to an implied license to use Jackson's persona and the G-Unit trademark. According to Defendants, Mondesir provided Odenat with mixtapes including songs by Jackson to make them available on worldstarhiphop.com. Defendants allege that in 2005, and again in 2006, Mondesir expressly informed Odenat that Odenat could use the "G-Unit" mark and Jackson's image on worldstarhiphop.com. During this time, Mondesir distributed the mixtape Are You a Window Shopper? with the worldstarhiphop.com URL. Defendants also contend that Mondesir gave Odenat express permission to use the third masthead in 2008. Defendants assert that Jackson was aware of the use of his images on the website as early as 2007 but did not ask for the images to be removed, and that Jackson told Odenat not to take the third masthead down during a meeting in October 2008.

Both parties agree that Mondesir needed apparent authority in order to bind Jackson. In order for Mondesir to have apparent authority, (1) Jackson "must have been responsible for the appearance of authority" by words or conduct communicated to Odenat, and (2) Odenat must have been reasonable in relying on Mondesir's representations. See F.D.I.C. v. Providence Coll., 115 F.3d 136, 140 (2d Cir. 1997); Restatement (Third) of Agency

§ 2.03 ("Apparent authority is the power held by an agent or
other actor to affect a principal's legal relations with third
parties when a third party reasonably believes the actor has
authority to act on behalf of the principal <u>and that belief is
traceable to the principal's manifestations</u>." (emphasis added)).
A principal's silence can create the appearance of authority
"when [the principal] knew or had reason to know that his
silence would be relied on." <u>Musket Corp. v. PDVSA Petroleo,
S.A.</u>, 512 F. Supp. 2d 155, 163 (S.D.N.Y. 2007) (internal
quotation marks omitted).

Mondesir's distribution of the mixtapes is an action by
Mondesir, not Jackson, and could not give Mondesir the
appearance of authority to bind Jackson. <u>See</u> <u>Holmes v. Lorch</u>,
329 F. Supp. 2d 516, 530 (S.D.N.Y. 2004) ("The agent cannot by
virtue of his own actions imbue himself with apparent
authority." (internal quotation marks omitted)).  Defendants
argue that Jackson's silence upon learning of the use of his
images in 2007 gave Mondesir the appearance of authority.
Assuming that Mondesir did grant Odenat permission to use the
"G-Unit" mark and the images of Jackson, Defendant provides no
evidence that Jackson knew or had reason to know of Mondesir's
authorization.  Thus, there was no reason for Jackson to believe
that his silence would have been relied on by Odenat. <u>See</u> <u>Musket
Corp.</u>, 512 F. Supp. 2d at 163 (noting that defendant did not

provide sufficient facts to suggest that the principal was aware
that the alleged agent would be perceived as the principal's
agent).  Moreover, Odenat could not have relied on Jackson's
silence in 2007 because Odenat does not allege that he was aware
of Jackson's knowledge of the masthead before 2008.  Nor would
Jackson's silence in 2007 cloak Mondesir with the appearance of
authority when Odenat began to use the first masthead in 2005,
the second masthead in mid-2006, or the third masthead in
January 2007.[6]

The defense would also fail on the second prong,
reasonableness.  Defendants characterize Mondesir as Jackson's
sometime DJ, collaborator, and distributor of mixtapes.  It is
not clear how that relationship would give Mondesir carte
blanche to license away Jackson's intellectual property. See
Meisel v. Grunberg, 651 F. Supp. 2d 98, 112 (S.D.N.Y. 2009)
(holding that actions outside the scope of the agent's authority
cannot be imputed to the principal).  Additionally, Defendants
provide no evidence suggesting that the authorization was
anything more than a conversation between two friends, Mondesir
and Odenat.  Those conversations could not be a reasonable basis

---

[6] Defendants' defense of ratification—not asserted in the answer and
raised for the first time in reply—would fail for the same reason. See
Rodonich v. House Wreckers Union Local 95, 817 F.2d 967, 973 (2d Cir.
1987) ("[R]atification can only occur when the principal, having
knowledge of the material facts involved in a transaction, evidences
an intention to ratify it." (internal quotation marks omitted));
Restatement (Third) of Agency § 4.06.

for Odenat to conclude that it had obtained a license to use Jackson's intellectual property. See Beastie Boys v. Monster Energy Co., --- F. Supp. 2d ----, No. 12 Civ. 6065, 2013 WL 5902970, at *12 (S.D.N.Y. Nov. 4, 2013). Thus, implied license fails as a matter of law, will not bar entry of a judgment in favor of Plaintiffs, and is stricken.

### 3. Equitable Estoppel

The defense of equitable estoppel fails for a similar reason. In order to succeed, Defendants acknowledge they must establish that (1) Jackson made a misleading communication, with "knowledge of the true facts," that caused Defendants to infer that Jackson would not enforce his rights against them; (2) they relied on the communication; and (3) they would be prejudiced. See Zoll v. Ruder Finn, Inc., Nos. 03 Civ. 3652, 01 Civ. 1339, 2004 WL 405938, at *2 (S.D.N.Y. Mar. 3, 2004).

As already discussed, Mondesir had no apparent authority to bind Jackson. Therefore, none of the communications Mondesir allegedly had with Odenat about the website could be conceived as Jackson's "misleading communications." Even assuming Odenat's other allegations are true, Jackson himself had no communications with Odenat about the website until the alleged meeting in October 2008. By then the third masthead had already been on worldstarhiphop.com for almost ten months. Odenat could not have relied on this alleged meeting when he first used each

of the mastheads.  Thus, the defense is stricken because it
fails as a matter of law.  It will not prevent the Court from
entering judgment in Plaintiffs' favor.

### 4. Unclean Hands

The doctrine of unclean hands is an equitable defense
requiring plaintiff to act "fairly and without fraud or deceit
as to the controversy in issue." Dunlop-McCullen v. Local 1-S,
149 F.3d 85, 90 (2d Cir. 1998) (internal quotation marks
omitted).  It "applies only with respect to the right at issue."
Warner Bros., Inc. v. Gay Toys, Inc., 724 F.2d 327, 334 (2d Cir.
1983).  In the trademark context, the fraud or deceit must
relate to plaintiff's "acquisition or use" of the trademark. See
Gidatex, S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp. 2d
126, 131 (S.D.N.Y. 1999).  For copyright claims, plaintiff must
have "either participated in the acts of infringement or . . .
committed some 'transgression' such as fraud upon the Copyright
Office resulting in harm or prejudice to the defendant." Coleman
v. ESPN, Inc., 764 F. Supp. 290, 296 (S.D.N.Y. 1991).

Defendant alleges that Jackson has unclean hands for three
reasons.  First, Jackson allegedly expressed his approval of
Odenat's use of his persona in October 2008, but later demanded
that his image be taken down and filed suit even after Odenat
complied.  Second, Jackson allegedly altered the focus of his
website, thisis50.com, to the "same format and focus" as

worldstarhiphop.com. (Def. Opp. Mem. 58.)   Finally, Odenat
alleges that Jackson hacked worldstarhiphop.com to shut it down
during settlement negotiations.

Defendants assert this defense generally with no attempt to
connect it to any of the rights at issue.   None of the alleged
conduct has anything to do with Plaintiffs' acquisition or use
of the trademark, nor do they suggest that Plaintiffs engaged in
copyright infringement or perpetrated a fraud on the Copyright
Office. See Gidatex, 82 F. Supp. 2d at 131; Coleman, 764 F.
Supp. at 296.   The defense therefore fails as a matter of law,
is stricken, and will not prevent the Court from entering a
judgment in favor of Plaintiffs.

The Court concludes that all of the affirmative defenses
fail as a matter of law and are stricken.   Therefore, none of
the defenses entitle Defendants to judgment as a matter of law.
Defendants' motion for summary judgment is denied as to all of
the claims discussed above.

Additionally, the affirmative defenses will not bar entry
of judgment in favor of Plaintiffs.   Therefore, for the reasons
discussed above, Plaintiffs' motion for summary judgment on the
copyright infringement and right to publicity claims is granted.
Plaintiffs' motion for summary judgment on the false
endorsement, trademark infringement, and common law unfair
competition claims is denied for the reasons given above.

## H. Plaintiffs' Fraudulent Transfer and Veil Piercing Claims

After Plaintiffs filed their complaint against Odenat, he created at least three business entities.  One of the entities, Worldstar Hip Hop, Inc. registered the trademark "World Star Hip Hop" and transferred it to Worldstar, LLC, another of Odenat's newly created companies.  Odenat also transferred worldstarhiphop.com to Worldstar, LLC.  Defendants claim that Odenat created the entities and transferred the website for legitimate business purposes.  Plaintiffs allege that these were not-for-value fraudulent transfers, within the meaning of New York Debtor and Creditor Law, and that the business entities should therefore be held liable as alter egos of Odenat.

Under New York Debtor and Creditor Law,

> [A] person challenging a transfer of the debtor's property as constructively fraudulent . . . must show that it was made without fair consideration and (1) the debtor was insolvent or was rendered insolvent by the transfer, (2) the debtor was left with unreasonably small capital, or (3) the debtor intended or believed that it would incur debts beyond its ability to pay when the debts matured.

In re Vargas Realty Enters, Inc., 440 B.R. 224, 240 (S.D.N.Y. 2010) (alterations in original) (citations and internal quotation marks omitted); see N.Y. Debt. & Cred. Law §§ 273, 274–275.  Plaintiffs have presented no evidence to show that Odenat was insolvent or that he has unreasonably small capital because of the transfer.  Although a jury could conclude intent

or belief from Odenat's conduct, it is not now demonstrated as a matter of law.

Plaintiffs raise an alternative theory pursuant to section 273-a of the New York Debtor and Creditor Law.  Under that section, a plaintiff must show "(1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 188 (2d Cir. 2006).  As Odenat has not been given an opportunity to satisfy any judgment arising from this action, Plaintiffs cannot show that the third prong is satisfied.  Plaintiffs are therefore not entitled to judgment on this claim as a matter of law.

Although Defendants claim that the transfer of the website was done for a legitimate business purpose, they have provided no evidence that the transfer of the website was made for consideration.  Moreover, under section 273-a, Defendants' intent is irrelevant. See Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp., No. 12 Civ. 4849, 2013 WL 6795963, at *4 (E.D.N.Y. Dec. 23, 2013).  Thus, Defendants have not demonstrated their entitlement to summary judgment on this issue.

Plaintiffs have presented sufficient evidence to survive Defendants' motion for summary judgment.  However, Plaintiffs are not entitled to summary judgment on the supplemental complaint.  Both parties' motions are denied on the fraudulent transfer issue.  There is therefore no reason to address reverse veil piercing at this time.

## I. Third-Party Plaintiff's Claims for Contributory Copyright Infringement and Contributory Trademark Infringement

Mondesir's motion is granted as to the contributory copyright and trademark infringement claims.  It is well established that an infringer has no right to contribution under federal copyright or trademark law. Getty Petroleum Corp. v. Island Transp. Corp., 862 F.2d 10, 16 (2d Cir. 1988) (inappropriate to imply right of contribution under the Lanham Act); Lehman Brothers, Inc. v. Wu, 294 F. Supp. 2d 504, 504–05 (S.D.N.Y. 2003) (no right of contribution under copyright law); 4 McCarthy on Trademarks and Unfair Competition § 25:23; 6 Patry on Copyright § 18:31.  Neither party appears aware of this limitation, and Odenat provides no caselaw to challenge this proposition nor does he provide an alternative state-law theory of liability.  Tellingly, all of the cases cited by Odenat have a holder suing an infringer for contributory liability; none support an infringer recovering from a third party.

### J. Third-Party Plaintiff's Claim for Contribution for Violation of New York Civil Rights Law §§ 50, 51

Unlike copyright and trademark law, there is a general right for a defendant to recover contribution from joint torfeasors under New York law. See N.Y. C.P.L.R. §§ 1401-1404. Odenat asserts that Mondesir induced Odenat's use of Jackson's images on worldstarhiphop.com. Odenat therefore seeks contribution from Mondesir in the event that Odenat is found liable for violating Jackson's right of publicity. Mondesir mischaracterizes the claim as though it alleges that Mondesir posted the images. In misconstruing the claim, Mondesir has not pointed to a lack of evidence that would make summary judgment on this issue appropriate. Similarly, he has not demonstrated a failure to meet the pleading requirements.

Mondesir also argues that the statute of limitations bars the claim. However, the claim for contribution would not accrue until Odenat made a payment to Plaintiffs, which has not yet happened. Bay Ridge Air Rights, Inc. v. State, 44 N.Y.2d 49, 53 (1978); see also Korean Air Lines Co. v. Port Auth. of N.Y. & N.J., No. 10 Civ. 2484, 2012 WL 6967232, at *5 n.4 (E.D.N.Y. Aug. 1, 2012). Mondesir's motion for summary judgment on this claim is therefore denied.

### K. Third-Party Plaintiff's Lanham Act Claim

On the Lanham Act claim, Mondesir raises several arguments. He argues that the "World Star Hip Hop" mark was not registered at the time the logo appeared on the mixtape and Odenat has not shown any evidence that the mark had acquired secondary meaning. He also claims that there is no evidence to suggest that he used the mark or that the use would likely cause confusion.

As explained earlier, a section 43 claim does not require a registered trademark. See also Famous Horse, 624 F.3d 106 at 109. To the extent Mondesir is challenging the placement of the World Star Hip Hop URL on the mixtape as a "use" of the mark "as a mark," such a use is not required for a false endorsement claim. See Kelly-Brown, 717 F.3d at 308. Mondesir's "use" argument also fails if he means that the mark was not "used in commerce," because all parties agree that the worldstarhip.com URL was "affixed" to the mixtape. See 15 U.S.C. § 1127.

Mondesir makes a conclusory assertion that consumers are unlikely to be confused, but does not meaningfully address any of the Polaroid factors except for the strength of the mark by way of challenging the secondary meaning of "World Star Hip Hop." The Court, having reviewed the placement of the URL on the mixtape, finds that a jury could conclude that consumers would likely be confused as to World Star Hip Hop's sponsorship

or affiliation of the mixtape.  Thus, Mondesir has not
demonstrated that Odenat's claim fails as a matter of law.

The statute of limitations does not save Mondesir's motion
on this claim.  As section 43 does not have a statute of
limitations, courts look to the most analogous state statute of
limitations.  See Conopco, Inc. v. Campbell Soup Co., 95 F.3d
187, 191 (2d Cir. 1996).  The six-year statute of limitations
provided for by Rule 213(8) of the New York Civil Practice Law
and Rules is the appropriate New York analog for a Lanham Act
claim.  Id. at 192.  Mondesir's alleged use of the
worldstarhiphop.com URL occurred in 2005.  Odenat filed the
third-party complaint against Mondesir in 2010.  Thus, Odenat's
claim is not barred by the statute of limitations.  Mondesir's
motion for summary judgment on this issue is therefore denied.

**L. Third-Party Defendant's Motion to Dismiss the Third-Party Complaint for Failing to Satisfy Minimal Pleading Requirements**

In addition to summary judgment, Mondesir also seeks
dismissal of the third-party complaint for failure to satisfy
minimal pleading requirements.  Based on the Court's conclusions
above, the Court need not address the sufficiency of Odenat's
three claims for contribution.

Setting aside whether it was appropriate to file such a
motion at the close of discovery, the Court denies Mondesir's
motion as to the Lanham Act claim.  Although Mondesir notes that

the claim lacks an allegation that the consumers would be "deceived," the third-party complaint alleges that consumers are likely to be confused as to sponsorship.  As discussed above, alleging a likelihood of confusion as to sponsorship is sufficient. See also Famous Horse, 624 F.3d at 109.

### M. Third-Party Defendant's Motion for Attorney's Fees

Having not disposed of all of the claims in the third-party complaint, it is not yet clear whether Mondesir is a "prevailing party" under either the copyright or trademark acts.  It is thus premature for the Court to consider his request for attorney's fees.

### III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is denied.  Plaintiffs' motion for summary judgment is granted as to their copyright infringement and right to publicity claims; their motion for summary judgment is denied as to the false endorsement, trademark infringement, and common law unfair competition claims, as well as to the fraudulent transfer and veil-piercing claims in the supplemental complaint. Mondesir's motion for summary judgment is granted as to the contributory copyright infringement and contributory trade infringement claims.  His motions for summary judgment and dismissal are denied as to Odenat's Lanham Act claim and the claim for contributory violation of New York Civil Rights Law §§

50, 51.  The Court also denies Mondesir's motion for attorney's fees as premature.

The Clerk of Court is directed to close the open motions at Docket Nos. 110, 120, and 139.  The Court will hold a status conference in this case on Wednesday, April 16, 2014, at 12:00 p.m. in Courtroom 20-C of the Daniel Patrick Moynihan United States Courthouse.

**SO ORDERED.**

Dated:     New York, New York
           March 24, 2014

                                           JOHN F. KEENAN
                                    United States District Judge