UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
CASE NO. 1:09-CIV-05583 (JFK) (GWG)

CURTIS JAMES JACKSON, III
p/k/a 50 CENT, TOMORROW
TODAY ENTERTAINMENT INC.,
a New York corporation, and
G-UNIT RECORDS, a New York
corporation,

          Plaintiffs,

      v.

LEE Q. ODENAT, a/k/a "Q," d/b/a
WWW.WORLDSTARHIPHOP.COM,
WORLDSTAR HIP HOP, INC., a Nevada
Corporation; WORLDSTAR, LLC, a Delaware
limited liability company; WSHH337, LLC,
a Delaware limited liability company;
JOHN DOE LLC(S)/CORPORATION(S),

          Defendants,

      v.

YVES MONDESIR,

          Third-Party Defendant.
_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO MOTION TO PRECLUDE COPYRIGHT STATUTORY DAMAGES**

      Plaintiffs CURTIS JAMES JACKSON, III p/k/a 50 CENT, TOMORROW

TODAY ENTERTAINMENT INC., a New York corporation, and G-UNIT RECORDS,

a New York corporation, by and through undersigned counsel, file this Memorandum in

Opposition to Defendants' Motion to Preclude Copyright Statutory Damages, and state:

      Although entitled as a "motion to preclude copyright statutory damages,"

Defendants' motion is effectively a motion for summary judgment on the issue of

willfulness. To the extent "willfulness" and "bad faith" are synonymous, the Court has already previously determined that the Defendants' intent could not be determined by way of summary judgment. Nevertheless, Plaintiffs address the points raised by Defendants.

Defendants' main premise appears to be that they are entitled to a finding by this Court, as matter of law, that Odenat did not willfully infringe Plaintiff's copyrights in two photographs because he did not know the source of those photographs, did not know where the photographs actually came from, and had never seen them. It is entirely unclear why this testimony by Odenat would absolve him. The fact that he clearly made no effort to determine the source of the photographs before using them to create a concocted cut-and-paste image of the musical group G-Unit for advertising purposes evinces a clear disregard for the copyright owners' rights. That is precisely the sort of evidence Plaintiffs intend to rely on to show Odenat's reckless indifference to Plaintiffs' rights. *See, e.g., Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010 (7th Cir. 1991), *cert. denied* 502 U.S. 861 (1991) (copyright infringement is "willful," for purpose of imposing increased statutory damages, if infringer knows that his conduct is infringing or if infringer has acted in reckless disregard of copyright owner's rights).

As Odenat testified with regard to the banner that included the copyrighted images: "[I] probably paid some kid $40 or $50 to put together this masthead" and did not "know where he got these images from." Q1-71-73; 83. Odenat obviously did not care where they came from, much less who owned the copyrights to the images. In fact, when asked, Odenat was virtually "all over the map" with regard to the origin of the copyrighted images:

Q.      So going back to Exhibit 3, in addition to the members of G-Unit, the image of the members of G-Unit, and by the way, is it your testimony, your belief, that every one of these images came from a mixtape and so it was okay to use?

A.      I believe that these images were on mixtapes because, you know, they were available on the Internet.  Yes.

Q.      Do you think that all images that appear on mixtapes are – they're lawful to use for your own purposes?

A.      The images were maybe available online, which is people will put on their websites as well as probably off magazine covers, I'm not sure, maybe articles.

Q.      So when you say available online, that you could find them online to be able to look at them, correct?

A.      I see them everywhere.

Q.      Right, okay. So they're available online and then does that mean – do you believe, then, that if they're available online, that you're allowed to use them for your own commercial purposes?

A.      Well, the images I seen online – well, I don't – I haven't made these banners, so I don't know what he was thinking.

Q.       Okay.  Do you know where these images came from or you're guessing –

A.      I have no idea.  I don't know where they came from.

Q.      You have no idea, okay.  So since you have been sued in this case, have you made any effort to find out where these specific images came from?

A.      No.

Odenat Depo. at pp. 80-81. (copy attached)

Contrary to Defendants' Motion, then, Odenat has admitted having seen the

images that were used on the banner that contained the copyrighted images – he just

could not recall exactly where he had seen them and did not know the precise source that

the graphic artist who designed the banner had used.  But one thing is clear:  Odenat did *nothing* to determine who owned the copyrights before using the images for his own commercial purposes.

Odenat also testified that at the time of the masthead which contained the copyrighted images, his "sole purpose" was to promote Whoo Kid.  Q1-70.  Obviously, the images do not simply promote Whoo Kid and the credibility of this explanation is appropriate for the jury to weigh.  *See, e.g., Twin Peaks Productions, Inc. v. Publications Intern., Ltd.,* 996 F.2d 1366 (2d Cir. 1993) (district court's determination of willfulness for purposes of assessing damages for copyright infringement is reviewed for clear error with particular deference to determinations regarding witness credibility; standard is whether defendant had knowledge that conduct represented infringement or recklessly disregarded possibility of infringement).

Moreover, Plaintiffs believe the entire "look" of the website at the time evidences Odenat's real intent.  Masthead #2, including the composite image of the musical group G-Unit, the top-centered direct route tab to G-Unit Radio, the bottom-centered 'G-unit radio' tab, and the sole G-Unit content on the rest of the page, gives the viewer the overall impression that Worldstar is an official G-Unit website.  See also D/AS-Paras. 19-23.  These are only some of the examples of evidence Plaintiffs intend to present at trial on the issue of Defendants' willfulness with respect to their unauthorized use of Plaintiffs' copyrighted photographs.

Plaintiffs object to the other evidence Defendants intend to utilize on the issue of willfulness.  Specifically, Plaintiffs have already filed a motion in limine with respect to Defendants' intent to continue to claim that Odenat relied on the implied or express

permission from Jackson's DJ, Whoo Kid and with respect to Jackson's purported implied permission, as both of those claims have already been disposed of by way of summary judgment.

Additionally, Plaintiffs vehemently dispute the proposed testimony that:

[A]t the time the images of Yayo and Banks were displayed on the masthead between mid-2006 and April 2007, Defendants retained an attorney, Tim Hernandez, to ensure that they were not posting material on www.worldstarhiphop.com which violated third parties' intellectual property rights.

Defendants' Motion at p. 10 and Zarin Declaration.  Not only is this *directly contrary* to Odenat's testimony that there were *no procedures of any kind* in place during the period of infringement to ensure the site did not violate third party intellectual property rights (see Odenat depo at 113-114) (copy attached), but Defendants have purposefully misrepresented Odenat's testimony with regard to Tim Hernandez, as can be clearly seen from the very deposition pages Defendants cited.  Odenat testified that Mr. Hernandez became his "legal team" well *after* the period of infringement (referring to Hernandez and others as his "new staff now," in June of 2010), not during the period of infringement, and that Mr. Hernandez's duties were limited to responding to complaints and *specifically did not include* reviewing content to make sure that it is lawful.  Odenat Depo at pp. 42-43.

In short, there is no basis to preclude Plaintiffs from seeking enhanced statutory copyright damages at trial, and Defendants' inapposite legal arguments and misrepresentation of the record are to no avail.

WHEREFORE, Plaintiffs request the Court to enter an Order denying Defendants' Motion in Limine.

Respectfully submitted,


GrayRobinson, P.A.
*Attorneys for Plaintiffs*
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
Telephone: (305) 416-6880
Facsimile:  (305) 416-6887


By: /s/Karen L. Stetson
Karen L. Stetson
Florida Bar No. 742937
Jonathan L. Gaines
Florida Bar No. 330361


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished U.S. Mail and e-mail to: Scott Zarin, Zarin & Associates, P.C., Zarin & Associates P.C., One Penn Plaza, Suite 4615, New York, NY 10119 and to John P. Fazzio, Esq., Fazzio Law Offices, 26 Broadway, 21st Floor, New York, NY 10004 this 1st day of October, 2014.


By: ___ s/Karen L. Stetson